Harrison, Appellant, *v.* Welsh.

502

Argued January 9, 1929. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*B. H. Ludlow*, of *Powell, Ludlow & Schaeffer*, for appellant.—Whenever a vendor occupies an established fiduciary relation toward the buyer, independent of the contract, a full disclosure is demanded: Shea's App., 121 Pa. 302; Leedom v. Palmer, 274 Pa. 22.

While the findings of a chancellor are entitled to the weight of a jury's verdict, they must be supported by evidence: Muia v. Herskovitz, 283 Pa. 163.

Where the testimony of a party is so contradictory as to present no basis for a finding, except a mere conjecture, it is proper to set aside such a finding: Mulligan v. Traction Co., 241 Pa. 139.

Under the authorities the test is whether there existed a course of business or of office practice according to which a letter would naturally have been mailed.

In the absence of actual sales, bid and asked prices are not competent evidence in the determination of the market value of securities: Virginia v. West Virginia, 238 U. S. 202; McWilliams v. Altemus, 288 Pa. 277.

*John C. Bell, Jr.,* with him *William N. Trinkle* and *John C. Bell,* for appellee.—There is no relation of confidence between buyer and seller of securities; they deal at arm's length: Rothermel v. Phillips, 292 Pa. 371; Guaranty Safe Dep. & Trust Co. v. Liebold, 207 Pa. 399; Standard Steel Car Co. v. Stamm, 207 Pa. 419; Rose v. Barclay, 191 Pa. 594; Morrow v. Wilson, 266 Pa. 394; Welsh v. Ford, 282 Pa. 96; Frey's Est., 223 Pa. 61; DuBois Boro. v. Water Works Co., 176 Pa. 430; Barnard v. Kellogg, 77 U. S. 383.

Where the fundamental relation between the parties is, as here, that of buyer and seller, and hence the direct opposite of what is ordinarily known as confidential in law, plaintiff must establish a confidential relationship by evidence that is certain: Leedom v. Palmer, 274 Pa. 22.

Where there is no attempt to prove actual sales or the absence thereof, a quotation of a "bid" or "asked" price, the time, source, amount or genuineness of which are all unknown, is not admissible to prove alleged excessive profits by defendant when the overwhelming weight of the evidence establishes that such quotations are not

accepted as reliable or trustworthy and do not establish or tend to establish market values.

Opinion by Mr. Justice Sadler, February 4, 1929:

William W. Harrison, now deceased, filed, in 1925, against Welsh, the defendant, a bill in equity averring the existence of an agency covering a period of more than thirty years, during which time bonds were bought and sold by the latter for the former, the total transactions involving several millions of dollars. It was set forth that the defendant acted for his principal, and took advantage of the relation to defraud plaintiff of large sums of money by charging for securities sold more than the cost or market value of the same. The sufficiency of the complaint was contested, and the objections raised by the defendant sustained. An amended bill was then substituted, in which the averment that Welsh acted as an agent of Harrison was abandoned, but the duty to account for sums, unlawfully received and withheld, was based solely on the allegation that the former was his confidential adviser in financial matters, upon whose statements reliance was exclusively placed.

Losses were said to have occurred by reason of the failure of Welsh to act honestly and in good faith, the amount of which could only be determined by a full disclosure of all dealings between the parties. Plaintiff claimed to have first discovered in 1925 that advantage had been taken of him in the purchase and exchange of securities to his great injury, and a repayment of any profit made by Welsh in the handling of the investments was asked. A responsive answer was filed, and much testimony taken on behalf of both parties. Numerous requests for findings of fact and law were presented to the chancellor, who placed of record his own conclusions. He determined Harrison was not entitled to the relief prayed for, and by decree nisi directed that the bill be dismissed. Exceptions to the

order were overruled, and a final decree to the same effect entered by the court in banc.

The correctness of the determination reached depends mainly on the findings of fact. It is needless to cite authority for the proposition that where such conclusions of the trial judge, approved by the court in banc, find support in competent testimony received, they are binding upon us. In view of the earnestness of the able counsel for appellants, we have examined with special care the voluminous record to decide whether the determinations of fact were justified, and are convinced that not only is there evidence to support the findings complained of, but they are supported by the great weight of the testimony. The decree entered was the inevitable result, if the chancellor's statements be taken as correctly describing the situation. An incidental question, based on the refusal to admit in evidence the copy of a letter offered, will be separately considered.

Harrison was seventy-five years of age when he filed this bill. For thirty years he had purchased, exchanged and sold securities through Welsh. The former was engaged in the sugar refining business until 1911, and was possessed of large means. After his retirement from active direction of it, he maintained an office in the City of Philadelphia, employing two secretaries and clerks, where he personally supervised the management of his estate. This activity continued until 1924, when he suffered a stroke, but still continued to direct the conduct of his personal affairs. His extensive knowledge of business matters and acquaintance with corporate financing and transactions connected therewith was not questioned. Some of his money was invested through other channels, but the greater part was employed in the purchase of bonds offered for sale by Welsh. The latter was in the investment bond business, not dealing in stocks. He purchased securities for his own account, and resold them to various clients, of whom Harrison was one, not charging him any com-

mission for his services. This course of dealing continued from 1895 to 1925, and the chancellor has found that during this entire period no fraud or misrepresentation was practiced, though on two occasions Welsh gave slight discounts to others for personal reasons, and on certain transactions his prices to Harrison were less than those charged other customers.

In the original bill Harrison swore that Welsh was his agent, and unlawfully secured from him excessive sums by misrepresenting the market prices of the securities sold. As already noted, this position was changed in the amended complaint, which alleged only that he was a "confidential adviser," upon whose word dependence was placed, and of which relationship advantage was taken. The real question before the court was one of fact as to whether any such connection existed, and it was answered in the negative. "Confidential relation is not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself. It appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed; in both an unfair advantage is possible": Leedom v. Palmer, 274 Pa. 22, 25. Clearly, the parties here were not so associated in their business relations as to justify a legal presumption that such connection existed as would be found in the case of trustee and beneficiary (Corrigan v. Conway, 269 Pa. 373), or principal and agent. To justify a finding that, in the various dealings, the parties were not vendor and vendee, evidence other than the mere purchase, sale and exchange of the bonds must be shown. "Where undue influence and incompetency do not appear, and the relation between the parties is not one ordinarily known as confidential in law, the evidence to sustain a confidential relation must be certain; it cannot arise from suspicion

or from infrequent or unrelated acts": Leedom v. Palmer, supra, p. 26.

Plaintiff attempted to meet this burden by showing the intimacy between himself and Welsh for a long time, and, disregarding certain of his statements, which were mere conclusions or opinions declaring Welsh was a confidential adviser, he relied largely upon expressions found in ten letters, some marked private, covering that period, in which reliance on the judgment of Welsh was indicated and wherein satisfaction, with the dealings between them, was expressed. It also appeared that from time to time the parties discussed financial matters generally, and the standing of corporations, in which one or both were interested. There was also some evidence, though contradicted, that Welsh had solicited a loan from Harrison, and also asked him to become a partner in his business. As was said by the court below, and we think correctly: "The plaintiff's contention must rest upon general and infrequent expressions of confidence contained in the correspondence between the parties, or their acts in connection with their business affairs......Considering all the circumstances, these expressions of confidence or reliance upon the service or judgment of Welsh are no more than one would naturally expect between a banker and his customer or a vendor and vendee of securities." The fact that Harrison conferred with Welsh in reference to a proposed gift, and was furnished upon request with information as to certain stocks owned by him, does not alter the view expressed. There was no proof of mental incapacity of the plaintiff; all of the evidence showed him to be an astute, keen, alert and experienced business man. Though he suffered a stroke in 1924, he still continued control of his affairs until the bill in this case was filed, and he was a witness at the trial which followed.

The testimony of all the witnesses showed plaintiff exercised his own judgment in making investments, fre-

quently refusing the offer of bonds made by defendant. He had ample opportunity to secure such data as was necessary and desired, before making purchase, and did not rely on any special knowledge of Welsh, which was beyond his power to secure. There was no fraud or misrepresentation shown, and Harrison had abundant chance and ability to acquire information requisite to determine proper values. "The state of the markets, the present and prospective value of a particular commodity, are among the things which are alike open to both buyer and seller, and neither is bound to instruct the other": Rockafellow v. Baker, 41 Pa. 319, 321. The mere fact that the vendor had a better opportunity to acquire knowledge as to the value of the subject-matter of this sale is immaterial, where the parties do not stand to each other in a position of trust or confidence: Andriessen's App., 123 Pa. 303. Ordinarily, the seller is not obliged to disclose facts of which he is aware when the vendee can in the exercise of his ordinary activities, discover the truth for himself, though he is responsible for loss if shown guilty of fraud or intentional concealment of essential matters: Rothermel v. Phillips, 292 Pa. 371.

It is contended that a different conclusion as to the relation of the parties would have been properly reached, had the court admitted and considered the contents of a letter dated July 18, 1910, written by Harrison to Welsh, as it appears in a copy book of correspondence found in plaintiff's possession. In this communication, evidently referring to the suggestion that a partnership between the parties be formed, Harrison said: "Since your visit to my office on Friday last, I have given your proposition much thought, and have concluded that it will be best for our relations to remain as in the past, i. e., I as the investor and you as my guide and adviser." Even if this copy was admissible, it is not sufficient to show the relation of the parties was other than vendor and vendee of bonds. Any purchaser of bonds from a dealer or banker listens to suggestions as to the merit

of the security offered, but the expressions used do not show that Harrison and Welsh bore any peculiar confidential relation. The evidence clearly shows the former exercised his independent judgment, after investigation, as to the wisdom of purchasing securities which Welsh owned and offered from time to time for sale.

Though the contrary conclusion could be reached, the court correctly refused to receive the paper presented in evidence. There was no testimony from which there could properly arise a presumption of its receipt by defendant, and he expressly denied a delivery to him. The writing did appear in a letter copy book of plaintiff, but testimony is entirely lacking to show the original was placed in an envelope, stamped and mailed. Harrison could not say that it had been, and, indeed, according to the practice of his office, some letters to Welsh were never mailed, but handed to him personally. There was proof of an office custom to place letters on a table, where they were lifted by the postman when he called, or at times deposited in the nearest post-office box, but no express testimony of actually mailing of the letter in question, or proof of such a fixed office practice or custom as would lead inevitably to this conclusion, and, therefore, any presumption arising as to the receipt of a properly addressed communication, duly stamped and mailed cannot be invoked. The refusal of the offer of the copy by the chancellor was justified by the authorities cited (Pearce v. Langfit, 101 Pa. 507; Whitmore v. Insurance Company, 148 Pa. 405; Neubert v. Armstrong Water Co., 211 Pa. 582), and to these may be added McSparran v. Insurance Co., 193 Pa. 184; Mankin v. Parry, 70 Pa. Superior Ct. 558; American Chemical Laboratories v. Trust Co., 81 Pa. Superior Ct. 137.

Plaintiff, in support of his right to recover for overcharges, attempted to establish a custom among dealers of bonds, limiting the amount of profit the vendor of

such securities should receive, but the evidence wholly failed to show the usage to be as contended, and the chancellor found that no such recognized and binding practice existed. In view of the conclusion that there was no actual fraud or misrepresentation, nor of the existence of any confidential relation between the parties, nor that any usage bound the parties,—where they were vendor and vendee,—as to the charges permissible to purchàsers, it becomes unnecessary to consider other assignments of error raising the question as to whether proof of bid and ask prices appearing in trade journals is admissible to determine market value, in the absence of actual sales. An effort was made to use the daily reports of the Commercial & Financial Chronicle to fix these facts. Disregarding the correctness of the ruling, that the testimony should be rejected because it was "unreliable and improper hearsay evidence," based on quotations of unlisted bonds, remote in time, and which did not tend to show the true market value of the securities in question, the plaintiff was in no way harmed, for under the findings already discussed he was not entitled. to a decree in his favor.

After a careful study of the entire record, aided by the forceful presentation of appellants' viewpoint of the facts, and the law deemed applicable, we are convinced that the action of the court below should be sustained, and all of the assignments of error overruled.

The decree is affirmed at the cost of appellants.