MAY BERGREN,
*Plaintiff and Respondent.*

vs.

JOHN L. BERGGREN,
*Defendant and Appellant.*

No. 2786; November 12th, 1957; 317 Pac (2d) 1101.)

For the defendant and appellant the cause was submitted upon the brief of R. G. Diefenderfer of Sheridan, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of Marvin L. Bishop and Thomas A. Nicholas both of Casper, Wyoming, and oral argument by Mr. Bishop.

Heard before Blume, C.J., and Harnsberger and Parker, J.J.

## OPINION

Mr. Chief Justice BLUME delivered the opinion of the court.

This action was brought by May Bergren against John L. Berggren to cancel and annul certain deeds, and a trust agreement and a power of attorney executed by May Bergren to John L. Berggren. The deeds involved were dated February 17, 1955, and conveyed land subject to a life estate in the grantor. One of the deeds was filed for record on February 17, 1955, and recorded in book 23, page 237 of the records of the County Clerk and Register of Deeds of Campbell County, Wyoming. The other deed was filed in the same office on March 26, 1955, and recorded in book 23, page 417. This should suffice to identify the lands which are involved. The trust agreement and the power of attorney were dated February 22, 1955. Judgment was rendered in favor of May Bergren, the plaintiff, against John L. Berggren, the defendant. The parties will hereafter be referred to in the same manner as in the court below.

It does not definitely appear when this action was commenced. It was probably in the month of May 1955. The original and first amended petition or the date of filing are not in the record. On August 19, 1955, the plaintiff filed her second amended petition.

In the petition, plaintiff alleged that she was the owner of the described real estate of the value of $80,000; that on February 17, 1955, she was infirm physically and mentally; that she was 93 years of age and had been an invalid for many years; that she was unable to read and that her hearing was greatly impaired and she was unable to understand the legal documents involved herein; that she was entirely dependent upon others for her physical needs and in connection with her business affairs; that defendant was employed by her to look after her properties at $10 per day; that he, knowing of the incapacity and infirmity of plaintiff, by means of trickery and fraud and undue influence, caused her to execute the deeds and power of attorney heretofore mentioned; that she did not understand the documents and never intended to convey the property in the deeds to the defendant. She prayed that the instruments above mentioned be canceled. We think in view of the fact that no attack was made on this pleading, that the statements above made are sufficient for the purposes of this case.

For a second cause of action, the plaintiff demanded an accounting from the defendant, but this cause of action was abandoned during the trial of the case and no further mention need be made thereof.

Defendant denied the essential allegations of the second amended petition and trial of this case held in Campbell County, Wyoming, before the court without a jury commencing on June 26, 1956, the case having been referred to the Honorable Franklin B. Sheldon, Judge of the Seventh Judicial District. Judgment was rendered in favor of the plaintiff and the defendant has appealed, alleging that the findings of the court were contrary to the evidence and contrary to law, and that the court erred in sustaining objections to

certain evidence offered by the defendant in the case.

I. John F. Raper, attorney at law living at Sheridan, Wyoming, had been acting as attorney for the plaintiff and the deeds and the power of attorney were drawn up by him, submitted to the plaintiff, and acknowledged by him as notary public. He voluntarily offered himself as a witness in the case. After having been permitted to testify to preliminary matters, objection was made that he acted in a confidential relation existing between attorney and client and that he should not be permitted to testify further. The court sustained this contention. The defendant, through his attorney, thereupon offered to prove by Mr. Raper that the witness read the deeds to the plaintiff, explaining to her the meaning and purport of the deeds; that this was done in the presence of Dr. Pratt and Dr. Laxson of Sheridan; that she fully understood and comprehended all that was contained in the deeds and the effect of executing and delivering them; that he acted as notary public in taking the acknowledgment and again asked her whether or not she executed the deeds of her own free will and that she fully understood and comprehended the effect of the deeds. The court excluded the offer and that is assigned as error.

Section 3-2602, W.C.S. 1945, provides as follows, prohibiting certain testimony:

"The following persons shall not testify in certain respects:

"1. An attorney, concerning a communication made to him by his client in that relation, or his advice to his client; or a physician, concerning a communication made to him by his patient in that relation, or his advice to his patient; but the attorney or physician may testify by express consent of the client or patient; and if the client or patient voluntarily testify, the attorney

or physcian may be compelled to testify, on the same subject."

Plaintiff in this case had testified to the execution of the deeds at considerable length and had stated that she did not hear any reference to any deed on February 17, 1955, and that she never intended to execute any such deeds. It is stated in 97 C.J.S. § 310, pp. 861, speaking of testimony of a privileged person, as follows:

"Where, however, the pentitent, spouse, or client has first testified as to such matters voluntarily, or at least without objection, the privilege is lost; and the same is true of testimony of a patient or other privileged person. Also, in some jurisdictions statutory provisions make the voluntary testifying by the privileged person a waiver of the privilege as to the subject about which he testifies. However, the waiver extends only to the subjects on which the privileged party has testified on direct examination, and a general waiver cannot be predicated on the privileged person having testified as to certain particular matters."

In this case, as already stated, the plaintiff testified at some length on the subject as to whether or not she executed the instruments voluntarily and whether she understood the effect thereof. The substance of her testimony will be set forth hereafter. So, without saying anything about the ethics involved, it would seem that, under the authority above mentioned, the court erred in not permitting Mr. Raper to testify. Since the trial of the case, Mr. Raper has died. His testimony has not in any manner been preserved so that the situation herein is a peculiar one. We need not determine what the rule should be if Mr. Raper's testimony had been so vital as to render the judgment herein unjust. The deeds in question were executed in the presence of three witnesses, namely, Dr. Pratt, Dr.

Laxson and the defendant. All three of them testified substantially to what John F. Raper would have testified if he had been permitted to do so. Under these circumstances, the testimony of Mr. Raper was merely cumulative. It is stated in 53 Am.Jur. § 106, p. 94:

"Generally, however, a judgment will not be reversed because of the refusal of evidence which is cumulative or tends to establish a fact which is conceded."

We think that rule should apply here and the error above assigned is overruled.

A similar offer of proof was made in connection with the so-called trust agreement and power of attorney. However, there is no dispute between the parties over this agreement. It was revoked by the plaintiff, as well as in the judgment of the trial court and no prejudice resulted to the defendant by reason of the ruling of the court in this connection.

II. The court made the following findings:

"1. On February 17, 1955, plaintiff made, executed and delivered two warranty deeds, copies of which are attached to the plaintiff's petition, conveying her ranch property in Campbell County and the ranch property of her late son in said county to the defendant, reserving to herself a life estate therein.

"2. On said date plaintiff was a senile, old lady 93 years of age or thereabouts, crippled and unable to walk, hard of hearing and unable to read because of failing eyesight, and was doubtless in failing health due to a chronic uremic condition for which she was hospitalized within a period of six months thereafter, and has been under constant doctor's care since that time. She was at the time of said conveyences entirely helpless physically and wholly dependent upon others to look after her business affairs and personal needs

and had been dependent upon her late son to look after her until his death on October 20, 1954.

"3. On February 17, 1955, the defendant was acting as the personal advisor of the plaintiff and as her agent and attorney in fact in the care and management of plaintiff's business and personal affairs and assisting her in the administration of her late son's estate, which arrangement was confirmed and reduced to writing by document dated February 22, 1955, designated "Trust Agreement and Power of Attorney' and appearing in the record as Plaintiff's Exhibit No. 3. Because of the confidential relationship existing between the plaintiff and the defendant at the time of the conveyances in question it is incumbent upon the Court to scrutinize said conveyances with great severity.

"4. The confidential relationship between the plaintiff and defendant having been established by the plaintiff's evidence, the conveyances in question are voidable as constructively fraudulent or the result of undue influence unless the defendant on the trial of the case has established by competent and sufficient evidence that the transactions were fair, equitable and honest and for an adequate consideration in the event of a sale or, as a gift, that the plaintiff had the benefit of impartial and independent advice and was fully informed of the nature and effect of her acts and was mentally competent at the time to act.

"5. The defendant has failed to meet the burden of proof imposed upon him by law in this instance, and in fact the evidence clearly discloses that although the plaintiff was undoubtedly rational at the time she signed the deeds and knew that she was conveying her property to the defendant, she undoubtedly did not fully understand the effect of her action and was undoubtedly motivated by a misapprehension of her needs and her mental processes were impaired and illogical due to groundless fears and imagined grievances, doubtless motivated by poor counsel and advice from neighbors and friends. Her unstable mental condition is evidenced by her request for the appointment

of Thomas Nicholas as administrator of her son's estate and his employment as counsel to handle the matter during the latter part of October, 1954, and a complete repudiation without any apparent reason or cause during the latter part of December, 1954, and the employment of John Raper of Sheridan as her attorney on the advice of a neighbor, and in the following May repudiating him and going back to Thomas Nicholas as attorney. Her employment of the defendant as attorney in fact and agent to look after her affairs indicates a recognition on the part of the plaintiff of her limited mental capacities, particularly in view of the fact that at the time the plaintiff was not conducting any ranching operations, and the leasing of the estate property and her own ranch properties had been previously taken care of by her attorney, Mr. Nicholas. Her attorney, John Raper, recognized that her mental facilities would be questioned when he called in the doctors to interview her at the time she executed the deeds.

"6. It further appears from all the evidence in the case that the plaintiff might well have considered the conveyances to have been made to the defendant in keeping with the trust arrangement as expressed in Plaintiff's Exhibit No. 3, and that the defendant was to hold the property only in trust for her and subject to her order and direction.

"7. The Court finds that the property in question was of the value of $100,000 or thereabouts and that the purported consideration testified to by the defendant of two $5,000 promissory notes bearing four per cent interest and due ten years after date was not an adequate and fair consideration to support a sale of this property, and there is no evidence that the notes were ever received by the plaintiff.

"8. The Court further finds that the plaintiff did not have the benefit of impartial and independent advice in relation to this transaction, excepting possibly the advice of John Raper, who was acting as her attorney in connection with the probate procedure, and the two Sheridan doctors, and their position in the matter is quite questionable in view of the fact that they took

the stand and testified freely, or offered to testify freely, as to confidential matters without claiming immunity. So that the Court must view their position in the matter as acting for and representing the defendant in the matter of this transaction.

\* \* \* \* \* \* \*

"10. The evidence fails to establish any logical or reasonable explanation for the plaintiff's alienation of all her property, or at least a substantial portion of her estate, thus depriving her daughter and grandson, the natural recipients of her bounty, from benefiting in her estate, or the giving of said property to a nephew of her deceased husband with whom her contacts had only been casual prior to this time, particularly in view of the fact that under the trust agreement itself she fully expected to compensate him for all his services on her behalf."

In accordance with the findings, the court canceled, set aside, and held for naught the deeds heretofore mentioned, the two promissory notes for $5,000 each executed by the defendant, and the trust agreement and power of attorney. The question is whether or not these findings and the judgment are sustained by the evidence.

We do not see that it would subserve any particular purpose to review the evidence in this case in detail. It may, however, not be amiss to mention some of the facts to amplify or elucidate some of the findings of the court tending to show that they are supported by substantial evidence.

Plaintiff was a widow of 93 years of age at the time of the execution of the deeds in question, incapacitated as stated by the trial court, if not more so. She and her deceased husband had two children, George, a son who died October 20, 1954, and a daughter, Hilda, who

had married Albert F. Anderson, and who was living at the time of the execution of the deeds, but who died in the summer of 1955. Hilda had a son Albert, a grandson of the plaintiff. They were all, and the only, blood relatives of the plaintiff . The daughter Hilda and her husband and the grandson, who were living in Chicago, had kept in reasonably close contact with the plaintiff during the years. They were present at the funeral of George. Albert, the grandson, was in Gillette to see his grandmother as late as January 20, 1955. So far as the record indicates, no facts were shown which in any way alienated the affections of the plaintiff from her blood relations. In fact it appears that she sent for her grandson in the summer of 1955, while she was confined in a hospital in Gillette, and his visit gladdened her heart, and she became more cheerful. According to plaintiff's testimony, she and her husband had made wills providing that the survivor would get the property of the deceased and on the death of the survivor then the property would go to the children, Hilda and George, or to the survivor, and if Hilda should be the survivor then upon her death the property should go to her son Albert.

John L. Berggren, the defendant, was no blood relative of the plaintiff. He was the son of the brother of plaintiff's deceased husband, and only by courtesy was called a nephew. He had had only casual connection with the plaintiff. He was 53 years of age in 1955. Plaintiff apparently wrote him a letter in November 1954, saying that she was lonely and would like to see him. He paid no attention to that letter until he arrived at plaintiff's ranch on January 31, 1955. At that time he talked with her for an hour. He then went to Sheridan to see Mr. Raper who had acted as attorney for plaintiff. He returned to Gillette on February 2 or 3, and then talked with plaintiff for three

hours. On February 10, he hired an ambulance and took plaintiff and Jessie Lewark, plaintiff's housekeeper, to Sheridan to a motel on the outskirts of Sheridan. At that time an agreement was made that the defendant would take care of her property, for she needed some one, and that he should receive $10 a day. This agreement was confirmed by a trust agreement and power of attorney dated February 22, 1955, and which recites the confidence which plaintiff had in the defendant. All payments due under this agreement were paid. Defendant states that almost at once, upon arrival at Sheridan, the plaintiff wanted to convey her land to him; that he agreed to it on February 10 or 11, on condition that he would give her two notes of $5,000 each, bearing interest at 4%, payable ten years after date. The deeds in question were executed on February 17, 1955, in the presence of defendant, John F. Raper, Dr. Pratt and Dr. Laxson. That was about a week after arrival in Sheridan. According to the defendant not even Jessie Lewark was present. Defendant stated that the deeds were executed about noon. He was in a hurry to show his ownership of the land and placed one of the deeds of record at Gillette, 100 miles distant from Sheridan, within approximately three hours after the deeds were executed. Plaintiff had deposits in some banks. The amounts do not appear. Apparently almost all of the property of plaintiff consisted of land. That the transaction at Sheridan and the execution of the deeds was rather unusual, if not unnatural, is clear. In fact defendant himself admitted that and doubted the validity of the deeds, when he stated, as the record shows, to two witnesses that he accepted the deeds "purely to protect her from somebody else getting it, and that he would give it (the land) back to her, but that he would like to receive some compensation for the time and trouble that he had spent." As we have already seen, his compensation

of $10 per day has been paid. Later, upon the advice of counsel, he changed his mind.

During the lifetime of plaintiff's son, George, the latter lived with the plaintiff and took care of all her interests. As some of the testimony of Albert Anderson shows, her grief over the death of George was extreme; that it was difficult to carry on any conversation with her after that time; that she was simply "lost" in thought. That is confirmed by the testimony of Thomas Nicholas, who further testified to her weakened mental condition and that she had delusions after her son's death. Two physicians testified that her condition was progressively deteriorating and her delusions plainly appeared again in the summer of 1955 when she was at the hospital in Gillette. The witness Marie Powell, for instance, testified that plaintiff was childish and "she was always afraid that somebody was going to get in and kill her." These delusions were confirmed by the testimony of Dr. R. C. Baughman. One of the defendant's witnesses, A. J. Pavlovich, testified that when plaintiff executed, or attempted to execute a will in December 1954, he doubted that plaintiff was mentally competent. Plaintiff's unstable and vacillating mental condition is further illustrated by the findings of the court in finding No. 5. On March 25, 1955, plaintiff gave a lease to some of her land, as though she alone was the owner thereof; that was true also when she signed an oil lease in April 1955. This would seem to indicate either that she did not consider, or did not know, that she had executed valid deeds to the property to defendant. It corroborates her testimony.

Counsel for defendant contends that the testimony of Dr. Pratt and Dr. Laxson is conclusive herein when they testified that plaintiff understood what she was

doing when she signed the deeds. We do not think so. We need not question their sincerity. But even physicians and psychiatrists may be mistaken. Dr. Laxson testified (Q. 1857) : "I do not know that she is partly deaf." That seems to be somewhat contradictory to his testimony when he stated that he talked loud. Contrast his statement with that of Marie Powell who said that plaintiff's hearing was "terrible." And contrast it with the testimony of Mr. Nicholas that "it took long very patient explanation to assist her." Moreover the plaintiff herself testified that she could not and did not read the deeds; that she understood only part of what was said by the parties present; that she did not hear any deed read to her; that she did not understand that she was signing any deed to the defendant; that no deed was mentioned to her and that she never intended to sign any deed. Counsel for defendant argues that her testimony cannot be accepted under the parol evidence rule, and hence the testimony of the two physicians stands uncontradicted and must be accepted. But the parol evidence rule has no application in a case such as before us, when proper pleadings are before the court, as they are in the case at bar. See 32 C.J.S. 932, 934, 935, 942, 953; 20 Am. Jur. § 1094, p. 955.

We need not relate other details. The findings and judgment of the trial court are supported by ample testimony. In fact we cannot see how the court, under the facts and the law, could have reached any conclusion other than it did. In this case there existed, as the court found, a fiduciary relationship between the defendant and the plaintiff. While each case must to a more or less extent stand on its own footing, the same general principle which caused this court to set aside a deed to an attorney in the case of York v. James, 62 Wyo. 184, 165 P.2d 109, 162 A.L.R. 730, applies here.

The authorities on the subject are numerous. Short quotations from a few more should suffice.

In 38 C.J.S. § 34, p. 813, it is stated:

"However, the law watches transaction of this kind between donors and donees in confidential relation with jealous scrutiny, especially when the gift is attacked by the donor. The rules as to the validity of gifts between parties in a fiduciary relation are applied with greater strictness to a gift inter vivos, by which a donor parts with something for which he still has some use, than to a gift by a will. Thus, ordinarily, a gift by a person, old and feeble and easily influenced, to one in attendance on him will be viewed with suspicion."

In Thaw v. Thaw, 2 Cir., 27 F.2d 729, 732, 733, the court said in part:

"For this confiding aged woman to secure relief in a court of equity, it is not necessary to establish her insanity or mental condition rendering her entirely incapable of executing a valid gift. Allore v. Jewell, 94 U.S. 506, 24 L.Ed. 260. 'Extreme weakness * * * will raise an almost necessary presumption of imposition, even when it stops short of legal incapacity * * *.' Harding v. Handy et al., 11 Wheat. 103, 152, 6 L.Ed. 429."

In Floyd v. Floyd, 7 Cir., 11 F.2d 841, 843, a case very similar to the case at bar, the court said:

"That there was dependant or fiduciary relation existing between the parties is too clear for dispute. Under such circumstances a court of equity will presume confidence reposed and influence exerted, and in such case the burden is upon the person who has received the gift to establish by clear and convincing proof the fairness and good faith of the transaction. The appellee did not meet or discharge this obligation. On the contrary, the evidence clearly shows that appel-

lant was overreached." See further Schrader v. Schrader, 298 Ill. 469, 131 N. E. 602, 604; Addis v. Grange, 358 Ill. 127, 192 N. E. 774, 96 A. L. R. 607; 24 Am. Jur. Sec. 116, p. 791; 26 C. J. S. Sec. 58, p. 749.

Defendant has not met the burden of proof above mentioned; the conveyances involved do not appear to be fair, and the judgment of the trial court is affirmed.

The plaintiff filed a motion to dismiss this appeal because an extension of time for filing the record on appeal in the lower court was not signed by the Honorable Franklin B. Sheldon who tried the case, but by Honorable G. A. Layman, Judge of the Fourth Judicial District of Wyoming. In view of our decision on the merits, it is not necessary to pass upon the motion to dismiss.

Affirmed.