Raymond Guy LESEBERG, Jeannette Phoebe Leseberg, Bert Henry Leseberg and Maureen Lola Leseberg, by Henry Leseberg, next friend, Appellants (Plaintiffs below),

v.

Irene LANE, Administratrix with Will Annexed of the Estate of Mary Butler, Deceased, and Dora Robertson, Appellees (Defendants below).

No. 3046.

Supreme Court of Wyoming.

March 20, 1962.

Spence, Hill, Oeland & Tschirgi, Lander, for appellants.

Simpson, Kepler & Simpson, Cody, Crofts, Mockler & Meier, Lander, for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

This is an action to compel defendant Dora Robertson to turn over the sum of $17,226.96, the balance of a joint account, to the administratrix of the estate of Mary Butler, deceased, so that this sum should become a part of the estate of the deceased. The agreement for the joint account in question reads as follows:

> "Joint Account—Payable to Either or Survivor
>
> "We agree and declare that all funds now, or hereafter deposited in this account are, and shall be, our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor.
>
> "It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.
>
> "[signed] Mary Butler
>
> "[signed] Dora Robertson  "

The plaintiffs herein are nephews and nieces of Mary Butler. Dora Robertson is one of the parties who signed the agreement for the joint account. Irene Lane is the administratrix with the will annexed of the estate of Mary Butler and is the daughter of Dora Robertson. The pleadings herein are rather profuse and it is not necessary to set out the details. The substance of the action herein is that Mary Butler was the only person who contributed to the joint account; that she had entered into the agreement above mentioned with Dora Robertson by reason of the undue influence on the part of the latter; and that, hence, the joint account is invalid. Dora Robertson denied the undue influence and claims the sum above mentioned as survivor.

The case was tried to the court without a jury and at the end of the trial the court found that Dora Robertson exercised no

undue influence over the deceased as a result of their relationship and that the amount in the joint account belonged to her. From that judgment the plaintiffs, appellants herein, have appealed to this court.

We have found no good reason to disturb the finding and judgment of the trial court.

Mary Butler and Dora Robertson were sisters. They were very much devoted to each other. There were no other sisters, no brothers and no children. Dora Robertson was the nearest relative to Mary Butler. It appears herein that sometime before 1953 Mary Butler had made a will and made no provision therein for Dora Robertson, and she made some statements that she did not want Dora Robertson to have any of her estate because the latter was well provided for financially. Those statements were made long before the joint account was established. At the time of the establishment of the joint account on January 26, 1955, Mary Butler was eighty-three years of age and Dora Robertson was about eighty-one years of age. Ed Butler, the husband of Mary Butler, died in 1951 at a home which he had in Lander. Mary Butler remained in the home for a comparatively short time and thereafter lived in a rest home in Lander. Dora Robertson also lived in Lander. After Mary Butler had commenced to live in the rest home, Dora Robertson visited her practically every day and did what little errands were necessary to be done for Mary Butler because the latter was not well physically. She had trouble with her feet and had some arthritis. Her fingers were somewhat stiff so Dora Robertson wrote practically all the checks with which to pay the bills owing by Mary Butler, including the bills for taxes and for board and room at the rest home. At times she also took Mary Butler downtown in Lander and in general performed such services as could be done by a younger sister for an older one, the latter of whom was physically not able to attend to her own affairs. Dora Robertson was physically in much better condition than her sister. It appears herein, however, that Frank Hays, an attorney at law in Lander, attended to any important business of Mary Butler. He died in the latter part of 1957 and at that time was executor of the will of Mary Butler who died in January 1957.

Arthur E. Oeland, one of the witnesses for the plaintiffs, stated that in 1954 he visited Mary Butler in connection with the purchase of some of her land for a school district and that at that time Mary Butler told him that Frank Hays took care of her business and that he would have to see him.

Dora Robertson testified that the joint account was established at the request of Mary Butler. The latter had had a joint account with her husband, permitting the inference that she knew the nature of a joint account such as is involved in the case at bar. The evidence further shows that it was the custom of the First National Bank of Lander, which held the joint account, to explain to the parties at the time an account such as here involved was established the nature of the transaction, including the fact that whenever one of them died the survivor could take the balance remaining in the joint account. Three witnesses testified to the fact that Mary Butler during her lifetime stated that she had a joint account with Dora Robertson. For instance, the witness Zoie Fuller testified: "She [meaning Mary Butler] said that they both drew on it [the account] and Dora took care of her bills and paid her bills for her, she could draw on it, and when she was gone the balance was Dora's. She said, 'I am leaving that to Dora.'"

To establish the contention that Dora Robertson exercised undue influence over Mary Butler, the plaintiffs introduced several witnesses. Among them was Dr. Wilmoth of Lander who testified that he had been the physician of Mary Butler for a number of years; that the latter in 1950 had some hallucinations; that she had a stroke in January 1954 which left her

partially paralyzed; and that she also had some hardening of the arteries and that this fact and having had a stroke somewhat affected her mind. Other witnesses testified that she was not coherent in her speech and actions. However, eight witnesses called on behalf of Dora Robertson testified that Mary Butler during the years in question here was mentally very alert; that she had a mind of her own; that she was a little stubborn and determined; and that she was not easily influenced. The witness, Wade, for instance, testified: "I got the impression that whenever she said anything, that was it, and that was all there was to it, and that is the way it worked out with me. She was very blunt, she was very discerning, used short sentences, but I think she meant every word she said. I don't think anyone could persuade her." The witness Mrs. Fuller, who had known Mary Butler for thirty years, testified as follows:

"Q. In your opinion was she a weak and submissive character? A. She was not. Mary was quiet and reserved, but she was very determined, and when she made up her mind she knew what she was doing and she stayed with it. She wasn't easily led or pushed around.

"Q. Did you ever see Dora Robertson attempt to coerce or threaten Mary Butler in any way? A. Absolutely not."

The testimony of the other six witnesses is substantially to the same effect.

In the case at bar Mary Butler was the only one who contributed to the joint account, and the creation of that account is accordingly in the nature of a gift to Dora Robertson. Counsel for the defendants say that the wording of the joint account is clear and unambiguous; that parol evidence is not admissible to vary or contradict it unless fraud, undue influence and mistake is shown; and that the burden of showing that fraud, undue influence or mistake was on the plaintiffs. A number of cases are cited. For example, Hadwiger v. Melkus, Okl., 365 P.2d 726; First Se-

curity Bank of Utah v. Burgi, 122 Utah 445, 251 P.2d 297. These cases do not discuss the question of confidential relationship. In Burns v. Nemo, Iowa, 105 N.W. 2d 217, the court found that no confidential relationship existed. In view of these facts, we cannot rely upon the cases cited in deciding the case at bar.

Counsel for plaintiffs and appellants herein contend that there existed a confidential relationship between Mary Butler and Dora Robertson; that the latter was the dominant personality; that, accordingly, the burden of showing that she did not exercise fraud or undue influence over Mary Butler was upon her; and that she failed to meet that burden.

A confidential relation by and of itself is not, legally speaking, of any importance. What is important is what effect it has on human affairs by way of fraud or undue influence; for instance, in connection with a gift, a deed, or other conveyance or a last will and testament. The relation is sometimes a question of law, sometimes a question of fact to be proven by the party asserting it like any other question of fact. Thus in In re Null's Estate, 302 Pa. 64, 153 A. 137, 139, the court stated:

"* * * Where one is bound to act for the benefit of another, he can take no advantage to himself. No precise language can define the limits of the relation; it generally exists between trustee and cestui que trust, guardian and ward, attorney and client, and principal and agent. In such cases, the confidential relation is a conclusion of law; in others, as parent and child, it is a question of fact to be established by the evidence. Harrison v. Welsh, 295 Pa. 501, 506, 145 A. 507; Leedom v. Palmer, 274 Pa. 22, 25, 117 A. 410; Pomeroy's Equity Jurisprudence, vol. 2, §§ 956, 957, 962. * *"

The court further stated at 153 A. 140:

"* * * care must be used not to confound acts springing from natural love and affection with confidential relations, and, while the line of demarca-

tion may in some cases be narrow, nevertheless, to sustain the integrity of gifts based on such affection in family relations, it is necessary that the distinction should exist. Harrison v. Welsh, supra [295 Pa. 501, 145 A. 507]; Leedom v. Palmer, supra, 274 Pa. [22], 26, 117 A. 410. Dependency does not necessarily beget a confidential relation; indeed, it may be quite the reverse."

See 17 C.J.S. Contracts § 132. The court further held that the mere existence of kinship does not of itself give rise to confidential relation.

In the case at bar, the main portion of the business of Mary Butler seems to have been attended to by, or at least with the knowledge of, Frank Hays, her attorney. Dora Robertson almost daily visited her sister while the latter was in a rest home. She performed, as heretofore mentioned, what may be termed menial services for her sister; for instance, writing checks which the sister had difficulty in writing because of the stiffness of her hand, running errands, taking her downtown, and bringing her drugs and other necessary things. Clearly such acts may well be attributed to love and affection and to that alone. So we hesitate to say that such acts constitute confidential relation so as to cast the burden on Dora Robertson to show that she used no fraud or undue influence in connection with the creation of the joint account. After all, Dora and Mary were sisters devoted to each other. There were no other sisters, no brothers, and Mary had no children. The natural object of the bounty of Mary Butler was her sister, who alone of her relatives paid much attention to her and administered to her wants and necessities. The transaction here is not an unusual one. Joint accounts of sisters are not unknown. The creation of the joint account in the case at bar was a natural act. The mere fact that Mary Butler sometime previously thought that Dora did not need any of her property is not, we think, of any importance. She had a right to change her mind.

Assuming, however, that a confidential relationship existed between the sisters, over and above that arising out of love and affection, we must inquire as to the effect thereof. We are cited to Bergren v. Berggren, 77 Wyo. 438, 317 P.2d 1101. In that case there existed a confidential relation as a matter of law. The facts in that case are entirely different from the facts in the case at bar, and the case is of no help herein. We are cited also to Baldwin v. Birchby, Wyo., 346 P.2d 278. In that case the testator, ninety-six years of age, was found to have full and complete mental capacity and was not easily influenced. His last will and testament was upheld. The situation is very similar in the case at bar. Mary Butler, according to witnesses for Dora Robertson, had complete mental capacity when the joint account herein was created. She had a mind of her own. She was not easily influenced. So that if we follow the Birchby case we must affirm the judgment of the trial court herein.

Counsel for plaintiffs, in asserting that Dora Robertson did not meet the burden of proof, mention twelve different facts or assumed facts. We need not examine each of the twelve points categorically. The fatal error which counsel make in their otherwise excellent brief is that they have not given sufficient credit to the testimony adduced on behalf of Dora Robertson and do not recognize that the trial court, contrary to their contention, was entitled to find as it did that the great weight of the testimony showed that at the time when the joint account was created Mary Butler, as compared with Dora Robertson, was the dominant personality; that she was sound mentally; and that no fraud was committed and no undue influence was exercised over her.

It appears that Dora Robertson did not use any of the money in the joint account for her own purpose until after the death of Mary Butler, and it is contended by

counsel for the plaintiffs that this shows that she did not consider that any part of the account belonged to her. But that is not necessarily true. The contract showed that Dora Robertson had an interest in the joint account and she was aware of that fact when she signed the instrument creating that account. We think that her action merely shows that she was absolutely honest and she was content to take merely what would be left to her as the survivor. If Mary Butler had lived long enough, the whole fund might have been exhausted before she died.

It does not appear (except by hearsay) that Mary Butler had any independent advice when she signed the agreement creating the joint account and counsel say that such independent advice was necessary before the joint account could be considered valid. They cite us to Woolwine v. Bryant, 244 Iowa 66, 54 N.W.2d 759. In 3 Pomeroy's Equity Jurisprudence, p. 797, 5 Ed., the author, commenting upon cases holding that independent advice would be necessary, states:

> " * * * However, in most jurisdictions where the question has arisen it appears that the courts have not laid down any such hard and fast rule. The question as to whether such independent advice is essential is ordinarily determined with respect to the nature of the confidence reposed, the nature of the transaction, and the circumstances in each particular case. * * "

In the case at bar, Mary Butler, by reason of her complete mental capacity and determined nature, was not in need of any independent advice. Furthermore, the testimony of the bank officers shows that a joint account is usually explained when created, so that it is not at all unlikely that she actually had independent advice.

As heretofore stated, Dora testified that Mary was the person who suggested the creation of the joint account. It is true that this testimony is not quite consistent with her testimony when she was called for cross-examination by counsel for the plaintiffs, but the discrepancy was for the trial court to resolve. Some allowance must be made for her age, which was eighty-seven, when she testified, and whatever discrepancy exists seems to have been brought about by the apparently soothing, mellow interrogating voice of one of the counsel for the plaintiffs.

The judgment of the trial court is affirmed.

Affirmed.