**Paul R. VAN ETTEN, Plaintiff,**
**v.**
**NEW YORK STATE NATURAL GAS CORPORATION et al., Defendants,**
**and**
**United States of America, Intervenor.**
**Civ. A. No. 5575.**

United States District Court
M. D. Pennsylvania.
March 27, 1961.

Harry Treinin, Corning, N. Y., Emory Rockwell, Wellsboro, Pa., for plaintiff.

Owlett, Cox, Wilcox & Owlett, Wellsboro, Pa., for defendant-New York State Nat. Gas Corp.

Anne X. Alpern, Atty. Gen. of Pennsylvania, Morley W. Baker, Sp. Deputy Atty. Gen. of Pennsylvania, for defendant-Pennsylvania Unemployment Compensation Fund.

Abbott M. Sellers, Acting Asst. Atty. Gen., Richard M. Roberts and Paul T. O'Donoghue, Attys., Dept. of Justice, Washington, D. C., Daniel H. Jenkins, U. S. Atty., Daniel R. Minnick, Asst. U. S. Atty., Scranton, Pa., for intervenor.

FOLLMER, District Judge.

The facts as disclosed by the pleadings and stipulated by the parties, except

as hereinafter specified, are adopted by the Court as if found pursuant to Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.

New York State Natural Gas Corporation (hereinafter called the Owner) on May 31, 1951 entered into a no lien construction contract [1] with Harold B. Fink, d/b/a Fink Construction Company (hereinafter called the Contractor), to furnish labor and material for the construction of office building and shops at Sabinsville, Pennsylvania. This contract was duly filed of record in the Office of the Prothonotary of Tioga County, Pennsylvania.

Plaintiff, Van Etten, entered into a subcontract with the Contractor to furnish the electrical work and materials pursuant to the contract between the Owner and the Contractor and duly performed all of the work and supplied all the materials required by said subcontract. The value of the work performed and materials supplied by the plaintiff under his contract with the Contractor and for which he has not been paid is $13,244.52. On or about March 27, 1952 the plaintiff terminated work due to the failure of the Contractor to make the payments required by the contract between the plaintiff and the contractor. On that date the plaintiff had not completed work or furnished materials of the value of $570.74. During the months of May and June, 1952, plaintiff completed the work and extras to complete the contract and was paid the sum of $570.74 by Tioga County Savings and Trust Company of Wellsboro, Pennsylvania, pursuant to an agreement made between the plaintiff, the Owner, the Contractor and the creditors of the Contractor.

The Commissioner of Internal Revenue assessed against Harold B. Fink, d/b/a Fink Construction Company, withholding taxes and Federal unemployment taxes in the total sum of $13,446.69. These taxes covered the period starting with the second quarter of 1951 through the second quarter of 1952. The first liens arose on May 21, 1952, and the last liens arose on November 5, 1954. The first notice of lien was filed on May 23, 1952, and the last notice of lien was filed November 8, 1954.

Under the provisions of Article 4 of the contract between the Owner and the Contractor, the Owner, New York State Natural Gas Corporation, retained the sum of $13,186.79 which, pursuant to an Order of this Court, has been deposited in the registry of the Court.

Plaintiff brought this action to obtain judgment for the retained funds. The District Collector of Internal Revenue was named a codefendant with the Owner and Contractor aforesaid. The District Collector was later dismissed as a defendant and the United States intervened to enforce the Federal tax liens and to obtain judgment against Contractor for outstanding tax assessments in the sum of $13,446.69, plus interest as allowed by law.

The Contractor did not and could not furnish a statement that all the subcontractors and material men had been paid.

The pertinent portions of the contract are as follows:

"Article 4. Progress Payments— The Owner shall make payments on account of the Contract as provided therein, as follows: On or about the Tenth (10th) day of each month Ninety (90) per cent of the value, based on the Contract prices, of labor and materials incorporated in the work and of materials suitably stored at the site thereof up to the First (1st) day of that month, as estimated by the Engineers, less the aggregate of previous payments;

---

[1]. An unnumbered paragraph following Article 6 of the contract provides as follows:

"It is agreed between the parties of this Contract that neither the Contractor nor any Subcontractor, material man or other person or company, will file or permit to be filed a Mechanic's Lien against the property or the structure to be erected on the property."

and upon substantial completion of the entire work, a sum sufficient to increase the total payments to Ninety-five (95) per cent of the Contract price.

"Article 5. * * *

"Before issuance of final certificate the Contractor shall submit evidence satisfactory to the Engineers that all payrolls, material bills, and other indebtedness connected with the work have been paid."

General conditions of the contract:

"Art. 22. * * * If the Contractor * * * should fail to make prompt payment to subcontractors or for material or labor, * * * then the Owner, upon the certificate of the Engineers that sufficient cause exists to justify such action, may, without prejudice to any other right or remedy and after giving the Contractor seven days' written notice, terminate the employment of the Contractor * * *. In such case the Contractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the contract price shall exceed the expense of finishing the work including compensation for additional managerial and administrative services, such excess shall be paid to the Contractor. If such expense shall exceed such unpaid balance, the Contractor shall pay the difference to the Owner. * * *

* * * * * *

"Art. 26. * * * The Engineers may withhold or, on account of subsequently discovered evidence, nullify the whole or a part of any certificate to such extent as may be necessary to protect the Owner from loss on account of:

* * * * * *

"(b) Claims filed or reasonable evidence indicating probable filing of claims.

"(c) Failure of the Contractor to make payments properly to subcontractors or for material or labor.

* * * * * *

"Art. 32. * * * Neither the final payment nor any part of the retained percentage shall become due until the Contractor, if required, shall deliver to the Owner a complete release of all liens arising out of this Contract, or receipts in full in lieu thereof and, if required in either case, an affidavit that so far as he has knowledge or information the releases and receipts include all the labor and material for which a lien could be filed; but the Contractor may, if any subcontractor refuses to furnish a release or receipt in full, furnish a bond satisfactory to the Owner, to indemnify him against any lien. If any lien remain unsatisfied after all payments are made, the Contractor shall refund to the Owner all moneys that the latter may be compelled to pay in discharging such a lien, including all costs and a reasonable attorney's fee.

* * * * *

"Art. 37. * * *

"The Contractor agrees—

* * * * *

"(e) To pay the Subcontractor, upon the payment of certificates, if issued under the schedule of values described in Article 24 of the General Conditions, the amount allowed to the Contractor on account of the Subcontractor's work to the extent of the Subcontractor's interest therein.

"(f) To pay the Subcontractor, upon the payment of certificates, if issued otherwise than as in (e), so that at all times his total payments shall be as large in proportion to the value of the work done by him.

"(g) To pay the Subcontractor to such extent as may be provided by the Contract Documents or the subcontract, if either of these provides

for earlier or larger payments than the above.

"(h) To pay the Subcontractor on demand for his work or materials as far as executed and fixed in place, less the retained percentage, at the time the certificate should issue, even though the Engineers fail to issue it for any cause not the fault of the Subcontractor."

In Aquilino v. United States, 1950, 363 U.S. 509, 512, 80 S.Ct. 1277, 1280, 4 L. Ed.2d 1365, the Court posed the question here involved as follows:

"The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property * * * sought to be reached by the statute.' Morgan v. Commissioner [of Internal Revenue], 309 U.S. 78, 82 [60 S. Ct. 424, 84 L.Ed. 585]. Thus, as we held only two Terms ago, Section 3670 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law * * *.' United States v. Bess, 357 U.S. 51, 55 [78 S.Ct. 1054, 2 L.Ed.2d 1135]. * * *"

■ Atlantic Refining Company v. Continental Casualty Company, D.C.W.D. Pa.1960, 183 F.Supp. 478, 482, involved a case very similar to the instant case. The only substantial variation being that in Atlantic Refining a surety was involved although it was not in the instant case. I do not think that that makes any difference in the net result so far as the facts of this case are concerned. The scholarly opinion of Judge Marsh so thoroughly and convincingly covers the entire situation that there is little that

I can add other than to say that I am in complete accord with that opinion. Judge Marsh held, inter alia:

"It is a general principle that a material failure of performance by one party to a contract not justified by the conduct of the other discharges the latter's duty to give the agreed exchange. Sections 274 and 275, Restatement, Contracts, with which Pennsylvania law is in accord; (citing Pennsylvania cases) * * *.

"In the cited cases it was held that the tax liens of the United States did not attach to the withheld funds; and the sureties and, in one case, the materialmen, won the money. In at least four of the cases, it seems that the contractors had completed or substantially completed the work for the owners, the contractual breach being their failure to pay materialmen.

"Therefore, I am of the opinion that a failure by the Contractor here to pay for labor and materials is just as much a failure to perform and carry out the terms of the contract as an abandonment of the work would have been.

"* * * Consequently, except for $23.17, the Contractor had no right of property in the balances withheld by the Owner; he could 'not get' the withheld balances, Lancaster County Nat. Bank's Appeal, 304 Pa. 437, 155 A. 859; he had 'no rights whatever' to the said balances, Prairie State National Bank of Chicago v. United States, 1896, 164 U.S. 227 [17 S.Ct. 142, 144, 41 L.Ed. 412] * * *.

*   *   *   *   *

"Thus when perfected in 1955, the lien of the government's taxes bound a contingent right of the Contractor to receive the balance of the contract prices if, but only if, he substantially performed his direct contractual obligations to the Owner to pay the materialmen. After his material breaches, the Contractor's contingent right never ripened into a 'right

to property' which he could enforce or on which the federal tax liens could attach."

 I conclude that the Contractor has no "property" or "right to property" in the withheld balances which the Owner paid into Court and, therefore, there was nothing to which the Government's lien could attach.

Let Order be submitted in accordance herewith.