444 A.2d 93

**WILLIARD, INC., et al., Appellants,**

v.

**POWERTHERM CORPORATION, Consho Construction Co., et al.**

Supreme Court of Pennsylvania.

Argued March 2, 1982.

Decided April 21, 1982.

Nolan N. Atkinson, Jr., Philadelphia, for Whelan Mfg. Co.

Henry M. Irwin, Philadelphia, for Gerngross Corp.

Joseph H. Dougherty, Philadelphia, for J. B. Eurell Co., Inc.

Richard L. Eppinger, Philadelphia, for John B. Kelly, Inc.

David R. Rosenfeld, Philadelphia, for Suburban Enterprises-Terrazzo & Tile Co.

Marc J. Sonnenfeld, Morgan, Lewis & Bockius, Philadelphia, for appellants.

Paul J. Donnelly, S. Gordon Elkins, Philadelphia, for Powertherm Corp.

630

John F. Peoples, Media, for Consho Const. Co.

F. Warren Jacoby, Philadelphia, for Berger Acoustical Co.

Harry C. Liebman, Philadelphia, for Belfi Bros. & Co.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellants are subcontractors of B. Bornstein & Son, Inc., who have not been fully paid for their services rendered in the construction of Bamberger's Department Store in Delaware County. Appellees are creditors of Bornstein whose present claims are unrelated to the Bamberger construction project. All parties seek to satisfy their claims against Bornstein from that portion of the Bamberger contract price which has not been paid to Bornstein. The contract balance of $147,396, has been interpleaded into court by the owners of the department store, who disclaim all interest in the fund.

We agree with the Court of Common Pleas of Delaware County that appellants alone have a cognizable interest in the contract balance. Hence, we reverse the order of the Superior Court, 278 Pa.Super. 156, 420 A.2d 477, and reinstate the order of the court of common pleas entering summary judgment in favor of appellants.

I

The contract for the construction of Bamberger's Department Store was entered into between B. Bornstein & Son, Inc., and the owner of the department store, Springpenn Properties, Inc., a wholly-owned subsidiary of R. H. Macy & Co., Inc. By the terms of the agreement, Bornstein promised, as general contractor, to "furnish all services, materials, labor, tools, equipment, plant facilities and everything necessary to undertake and complete in a thoroughly first-class workmanlike manner all of the work . . . ." Article I.

Bornstein further agreed to "do any part of the work with its own organization or sublet any part of it, whenever it is to the interests of the work to do so; provided that for such parts of the work as under general construction practice are customarily sublet, Contractor shall, if so directed by Owner, sublet such parts of the work." Article VII. The contract additionally provided: "no mechanics claims or liens shall be filed or maintained by Contractor, by any of its subcontractors or by parties furnishing it, them or any of them with labor or materials, against the premises. * * * Contractor agrees to indemnify and save harmless Owner from and against all costs, fees (including legal fees) and damages suffered or incurred by Owner by reason of the filing of any such lien, notice of lien or claim . . . ." Article XI.

The owner was to pay Bornstein a fixed price, subject to adjustment for specified additions or deductions, in monthly installments of 90% of the value of the work "actually and satisfactorily incorporated in the site at the end of the next preceding calendar month." The parties also agreed:

"If at any time there shall be evidence that Contractor has not paid what is due to any subcontractors or parties furnishing Contractor with labor or materials, Owner shall have the right, but not the obligation, to retain out of any payment then due, or thereafter to become due to Contractor, an amount sufficient to pay such claim. Should there prove to be any such claim after all payments have been made to Contractor, Contractor shall refund to Owner all monies that Owner may pay in discharging any such lien or liability.

Prior to receiving final payment, and from time to time during the course of the work if required by Owner, Contractor agrees to furnish satisfactory evidence that all of Contractor's employees, subcontractors and suppliers of materials or equipment used in the work covered by this agreement have been paid in full, and to execute and deliver to Owner a full and complete release of liens, signed by or on behalf of all persons who have had a part in supplying materials or equipment or performing any of the work covered by this agreement.

Nothing in this agreement shall create any obligation on the part of Owner to pay to or see to the payment of any sums to any subcontractor of Contractor or to anyone furnishing labor or materials to Contractor."

Article XI.

After construction of the Bamberger's Department Store had been completed, Bornstein made unsuccessful demands upon owners, Macy and Springpenn, to recover the outstanding balance of the contract price, $147,396. Bornstein then initiated the present action by filing a complaint in assumpsit, in which Bornstein alleged that it had "fully performed all the terms and conditions" of the contract. Macy and Springpenn answered the complaint by filing a petition for interpleader in which they noted that the contract had not been fully performed. They stated that, notwithstanding their demands, Bornstein has "refused to comply" with the requirement of Article XI that Bornstein "furnish satisfactory evidence that all of Contractor's employees, subcontractors and suppliers of materials or equipment used in the work covered by this agreement have been paid in full," and "execute and deliver to Owner a full and complete release of liens, signed by or on behalf of all persons who have had a part in supplying materials or equipment or performing any of the work covered by this agreement." Macy and Springpenn further averred that claims inconsistent with those asserted by Bornstein had been made upon them by persons and firms who had "not been paid in full by Bornstein for the labor, materials or equipment which they furnished to the Project," as well as by companies which had rendered services to Bornstein in connection with jobs "unrelated to the Project." The trial court granted the petition for interpleader and added all known claimants as parties, directing them to file a complaint with the court if they wished to have their claims adjudicated.

Appellant Williard filed a motion for summary judgment on behalf of the twelve claimants who held claims as subcontractors of the Bamberger project. The trial court granted the motion, concluding that only the claims related to the

Bamberger project could be satisfied from the balance outstanding on the Bamberger contract.*

An appeal was taken by appellee Conshohocken Construction Company, an attaching judgment creditor of Bornstein, and appellee Powertherm Corporation, a subcontractor who, as assignee of Bornstein's interest in the contract balance, sought priority over other subcontractors of the Bamberger project. A panel of the Superior Court reversed on the theory that Bornstein had "substantially performed" the contract and thus was entitled to the withheld balance of the contract price. According to the Superior Court, Bornstein's failure to satisfy Article XI of the contract (requiring proof of payment to all subcontractors as a prerequisite to Bornstein's receipt of final payment) was an "immaterial" breach because the owners had no legal liability to the subcontractors for their unpaid claims. The court also rejected the trial court's holding that the subcontractors had an interest in the fund both in equity and as third party beneficiaries of the construction contract. In the view of the Superior Court panel, the subcontractors were merely general creditors of Bornstein, whose claims were subordinate to the claims of Bornstein's judgment creditor and assignee.

## II

It is a basic principle that the rights of claimants to an interpleaded fund must be determined on their own merits. *Slavin v. Slavin*, 368 Pa. 559, 84 A.2d 313 (1951). Thus, before an issue of priority among claimants is properly presented, it must be determined whether each of the claimants has a cognizable interest in the fund.

As judgment creditor and assignee of Bornstein, appellees claim "through" Bornstein and thus succeed to no greater rights than those of Bornstein in the contract balance retained by the owners. See, e.g., *Central Surety and Insurance Corp. v. Martin Infante Co.*, 272 F.2d 231 (3d Cir. 1959).

---

* Unpaid claims for labor and material supplied to the Bamberger project totalled $341,363.84, resulting in a pro rata distribution of approximately 43% of each subcontractor's claim.

Consequently, appellees' asserted right to satisfy their claims against Bornstein from the contract retainage depends, in the first instance, upon whether Bornstein has a right to the retained fund.

In determining that, despite Bornstein's failure to make full payment to its subcontractors, Bornstein had "substantially performed" the contract and thus had a right to the retainage, the Superior Court concluded that the materiality of Bornstein's promise to see that the subcontractors were paid was dependent upon the owners' potential for liability to the subcontractors. The Superior Court reasoned that, once the project had been completed and no liens had been filed or could validly be filed against the project, see 49 P.S. § 1502 (1965) (liens must be filed within four months of completion of the work), the contractor's promise to furnish the requisite release of liens and satisfactory evidence of payment to subcontractors was no longer material to the owner.

■ Notwithstanding some support in prior case law for the Superior Court's reasoning, see *Getty v. Pennsylvania Institute for Instruction of the Blind*, 194 Pa. 571, 45 A. 333 (1900); *C. A. Klinges, Inc. v. Camblos Construction Co.*, 194 Pa.Super. 585, 168 A.2d 916 (1961), we conclude that it is not at all inconsistent for an owner, through contract, both to secure itself from legal liability to subcontractors who contribute to the construction of its project and at the same time to insist upon payment of the subcontractors' claims. To the contrary, an owner's interest in developing and maintaining good relations with the subcontractors, as well as with others in the construction industry and in the community, may make the contractor's compliance with the contractual obligation to pay subcontractors "material" to the owner at all times, even after construction has been completed.

■ It is clear from this agreement that these owners had a "material" interest in assuring payment to subcontractors who participated in the construction. Article XI of the

agreement specifically provides that prior to final payment the contractor shall furnish the owner with not only a "full and complete release of liens," but also "satisfactory evidence that all of Contractor's employees, subcontractors and suppliers of materials or equipment . . . have been paid in full." The remainder of the thirty-page contract is replete with provisions manifesting the owner's concern with the selection, supervision and welfare of the subcontractors. The contract provides that the owner has the right to propose the names of subcontractors "for some of the principal parts of the work;" that "the employment of all subcontractors shall be subject to the approval of Owner;" that "for such parts of the work as under general construction practice are customarily sublet, Contractor shall, if so directed by Owner, sublet such parts of the work;" that "Contractor shall procure Owner's written approval before entering into any contract for the purchase of major items of materials or before subletting any portion of the work;" and that "Contractor shall remove from the site of the work any employee not satisfactory to Owner." Moreover, the contract provides that failure "to make prompt payment to subcontractors or for material or labor" is a "substantial violation" of the contract for which the owner may, after giving 15 days' written notice, terminate the employment of the contractor, and for which the owner "shall have the right to retain out of any payment then due, or thereafter to become due to Contractor, an amount sufficient to pay such claim." Articles VI, VII, XI and XII.

Having bargained for the right to withhold final payment from the contractor until receipt of "satisfactory evidence" that subcontractors had been paid, the owner had a right to insist, as it did, that the contract be performed according to this material term. Because Bornstein, as contractor, breached the contract by failing to provide assurance that the subcontractors had been fully paid, and because the final payment retained by the owner does not exceed the amount of the subcontractors' claims against Bornstein, Bornstein has no right to any of the retainage. Thus, appellees, who

claim through Bornstein as its judgment creditor and assignee, similarly have no right to the fund. See *Avco Delta Corporation Canada Ltd. v. United States*, 484 F.2d 692, 699–701 (7th Cir. 1973), cert. denied, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974); *United States v. Chapman*, 281 F.2d 862 (10th Cir. 1960); *Van Etten v. New York State Natural Gas Corp.*, 192 F.Supp. 837 (M.D.Pa.1961).

## III

■ Given the fact that appellees do not have a valid claim to the contract balance, it must be obvious that only appellants have a cognizable interest in the fund. On this record, the owners have not asserted any contractual right of set-off in the retained fund. Indeed, the owners have disclaimed any interest in the contract retainage by interpleading the fund into court.

It would be manifestly unjust for an owner to withhold final payment from the contractor out of concern for the subcontractors and then disregard the subcontractors' interests by failing to distribute the retainage. In such a case there can be no doubt that equity and justice would recognize the subcontractors' claims against the contract balance. See Restatement of Restitution § 160 (1937).

Appellants have the same right to proceed against the interpleaded fund as they would have if the fund were in the hands of the owner. See *Atlantic Refining Co. v. Continental Casualty Co.*, 183 F.Supp. 478, 486 (W.D.Pa. 1960). Accordingly, it must be concluded that appellants have a right to the interpleaded fund withheld by the owners to assure the payment of subcontractors on the Bamberger project. As only appellants have a cognizable interest in the interpleaded contract balance, the order of the Superior Court must be reversed and the order of the Court of Common Pleas of Delaware County granting summary judgment in favor of appellants reinstated.

Order reversed; order of the Court of Common Pleas of Delaware County reinstated.