In re Anthony P. BUONO, d/b/a Anthony Buono Floors & Walls, Debtor.

DAL–TILE CORPORATION, Plaintiff,

v.

Mary REITMEYER, Trustee, Defendant.

Bankruptcy No. 89–0671.
Adv. No. 90–0125.

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 18, 1990.

Mary Reitmeyer, Pittsburgh, Pa., trustee.

George L. Cass, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for Dal–Tile Corp.

James A. Pello, III, Grogan, Graffam, McGinley & Lucchino, P.C., Pittsburgh, Pa., for debtor.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Dal–Tile Corporation ("Dal–Tile") has instituted a turnover action against Mary Reitmeyer, Trustee ("Trustee") for the bankruptcy estate of Anthony P. Buono, d/b/a Anthony Buono Floors & Walls ("Debtor"), in which Dal–Tile Corporation ("Dal–Tile") seeks to recover $15,931.62 from funds which Trustee received from Max Construction Co., Inc. ("Max"). Dal–

Tile maintains that the funds in question are not property of the bankruptcy estate and argues that Trustee holds them as constructive trustee for Dal–Tile.

Trustee has offered a defense to the action and has counterclaimed to compel Dal–Tile to return $30,612.90 which Dal–Tile received from Max on the theory that receipt of said funds was the result of a preferential transfer.

Before the court at this time is a motion by Trustee for summary judgment as to both Dal–Tile's claim and Trustee's counterclaim.

Summary judgment will be granted in favor of Trustee with respect to both matters.

## FACTS

Debtor performed work as a subcontractor for Max, a general contractor, in connection with several construction projects. Dal–Tile, among others, provided supplies and materials to Debtor for those projects. As of January 17, 1989, Debtor had accumulated a past-due trade balance to Dal–Tile for those supplies and materials.

On January 17, 1989, Debtor, Dal–Tile, and Max executed a Joint Check Agreement ("Agreement"), whereby it was agreed that subsequent payments to Debtor by Max would be made payable jointly to Debtor and Dal–Tile. It was further agreed that Debtor would endorse the checks and deliver them to Dal–Tile and that Dal–Tile would refund to Debtor any amount in excess of what Debtor owed to Dal–Tile.

On January 13, 1990 and January 20, 1990, Max issued checks jointly payable to Debtor and Dal–Tile totaling $40,112.90, which checks were endorsed by Debtor and delivered to Dal–Tile.

Dal–Tile refunded the sum of $9,500.00 to Debtor shortly after it received the checks. In all, Dal–Tile retained $30,612.90 of the funds it received under the Agreement.

On March 16, 1989, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code and a trustee was subsequently appointed.

On April 10, 1989, Trustee made a demand upon Max for the balance due to Debtor for work it had performed as subcontractor for Max. Trustee subsequently received a total of $17,622.95 from Max.

On May 9, 1989, Trustee made a demand upon Dal–Tile for return of the $30,612.90 which it had retained under the Agreement. Dal–Tile refused to return the funds.

## ANALYSIS

Summary judgment is appropriate only when, after considering the record evidence in the light most favorable to the non-moving party, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3rd Cir.1988).

The question of materiality is to be determined with reference to the substantive law in a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment will not lie if the dispute concerning a material fact is "genuine", that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3rd Cir.1989). However, summary judgment shall be entered when the record is such that it would not support a rational finding that an essential element of the non-moving party's claim or defense exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The burden of demonstrating the absence of material fact remains with the moving party regardless of which party would have the burden of persuasion at trial. The party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3rd Cir.1987).

According to Trustee, the Agreement executed on January 17, 1989, constituted a preferential transfer and thus is avoidable pursuant to 11 U.S.C. § 547(b).

Dal–Tile responds that the funds at issue are not property of Debtor's bankruptcy estate and claims that Trustee holds the funds it seeks to recover as constructive trustee for Dal–Tile.

Accordingly, there are two (2) questions to be answered: 1) Are these funds assets of the estate?; and 2) Is the execution of the Joint Check Contract a preference?.

We answer both questions in the affirmative by determining that Debtor had an interest in the *res* in question and that the execution of said Agreement clearly enhanced Plaintiff's position within the preference period to the detriment of similarly situated creditors.

Section 541(a) of the Bankruptcy Code specifies what is included in a debtor's estate. Most importantly, it includes "... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The scope of § 541(a)(1) is "broad and pervasive". It includes all kinds of property. *U.S.A. v. Whiting Pools, Inc.*, 462 U.S. 198, 204 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 (1983).

■ Pursuant to its contracts with Max, Debtor was entitled to payment upon completion of its work on a project. Also, the fact that Debtor was a joint payee on the checks issued by Max establishes that it had a property interest in those funds. *In re Temp–Way Corp.*, 80 B.R. 699, 702 (Bankr.E.D.Pa.1987). Debtor unquestionably had a property interest in the funds at issue in this case.

In light of Debtor's property interest in those funds, they must be turned over to the bankruptcy estate. *Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962, 968 (5th Cir.1983).

Dal–Tile calls the Court's attention to the following paragraph of the contracts between Max, as general contractor, and Debtor, as subcontractor:

If the Contractor deems it necessary, payment may be withheld to assure payment of the Subcontractor's unpaid obligations. Prior to final payment the Subcontractor shall submit from each and every subcontractor and supplier, releases of the Contractor and its surety, and indicating full payment of all monies due or to become due relating to the Contract. Before any payment is made to the Subcontractor, it shall prove that the Project and its work is free and clear of all liens and claims and execute all lien releases as Contractor shall request.

According to Dal–Tile, Pennsylvania law holds that where such a provision is present and where a subcontractor has failed to pay its materialman, the subcontractor has no property interest in the funds it owes to the unpaid materialman. Dal–Tile cites to *Williard v. Powertherm Corp.*, 497 Pa. 628, 444 A.2d 93 (1982) in support of its position.

Dal–Tile's reliance upon *Williard* is misplaced. To begin with, *Williard* was not a bankruptcy case. Its applicability to the present controversy is not obvious. More importantly, although the *Williard* court did find that the contractor had no "cognizable interest in the fund", *Id.*, 444 A.2d at 97, the court did *not* determine that the contractor had no property interest whatever in the funds. Rather, it merely held that the subcontractor's right to the funds was superior to those of the contractor. The issue before the court was the priority of competing claims to the funds, not whether the contractor had any property interest in the funds.

In addition, and more importantly, the *Williard* court determined the interest of a *group* of subcontractors. Plaintiff herein is merely one of similarly situated creditors. To allow Plaintiff to retain and/or collect the funds in question and thereby be paid one hundred percent (100%) of its claim while others who are similarly situated are paid substantially less is contrary to the basic philosophy of the Bankruptcy Code.

The determination that Debtor had a property interest in the funds is not the end of the matter. The broad scope of a debtor's estate in § 541(a)(1) is modified

and limited by 11 U.S.C. § 541(d), which provides in pertinent part:

[p]roperty in which the debtor holds only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the 'debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Thus, where a *debtor* holds only bare legal title to property without any equitable interest, the *estate* acquires only bare legal title without any equitable interest. *In re N.S. Garrott & Sons*, 772 F.2d 462, 466 (8th Cir.1985).

Dal–Tile seeks to have a constructive trust imposed upon the funds which Max paid directly to Trustee after Trustee had demanded that Max do so.

■ Constructive trusts are to be applied sparingly in bankruptcy contexts because they have the undesirable effect of giving preference to one creditor over others. *In re Miller's Auto Supplies, Inc.*, 75 B.R. 676, 679 (Bankr.E.D.Pa.1987).

■ There is nothing in the original contract between Max and Debtor, to which contract Plaintiff is a stranger, which would justify imposing a constructive trust upon Trustee in favor of Dal–Tile. If one were to be imposed, it could arise only out of Trustee's actions in light of the Agreement. This matter need not, however, be addressed. Any interest (equitable or otherwise) in the funds that Dal–Tile acquired as a result of the Agreement constituted a preferential transfer under 11 U.S.C. § 547(b) and, as such, may be avoided by Trustee.

Several essential elements must be satisfied in order for § 547(b) to apply:

(1) there must have been a transfer of an interest of the debtor in property;

(2) to or for the benefit of a creditor;

(3) for or on account of an antecedent debt;

(4) made while the debtor was insolvent;

(5) made within ninety (90) days of the filing of the petition, or within one (1) year if the creditor was an insider of the debtor; and

(6) the creditor received more than it would in a Chapter 7 liquidation.

*In re Funding Systems Asset Management Corp.*, 111 B.R. 500, 522 (Bankr.W.D. Pa.1990).

Each of these elements is found with respect to the Agreement in the case at bar.

A transfer of Debtor's interest in the funds occurred when Debtor relinquished the exclusive right to receive payments from Max, and agreed instead to the issuance by Max of checks jointly payable to Debtor and Dal–Tile, which checks Debtor further agreed to endorse and deliver to Dal–Tile. The transfer was for the benefit of Dal–Tile and was for an antecedent debt. The purpose of the Agreement was to ensure that Debtor's past-due debt to Dal–Tile was satisfied. Dal–Tile has not rebutted the statutory presumption of insolvency, *see* 11 U.S.C. § 547(f). To the contrary, Debtor's insolvency at the time in question is not an issue. The transfer took place less then ninety (90) days prior to the filing of the bankruptcy petition on March 16, 1989.[1] Finally, the transfer permitted Dal–Tile to receive more than it would upon liquidation of Debtor. Dal–Tile was to receive payment in full under the Agreement while similarly situated creditors will receive substantially less, if anything.

Plaintiff's issues and its right to this *res* directly relate to this Agreement. This Agreement is a textbook example of a bankruptcy preference which Trustee properly demands be avoided.

Summary judgment will be entered for Trustee and against Dal–Tile, both as to Dal–Tile's claim against Trustee and Trustee's counterclaim against Dal–Tile.

An appropriate Order will be issued.

---

1. It is this feature, perhaps more than any other, that differentiates the present case from all of the cases cited by the parties. In all other cases, the Joint Check Agreement had been entered into more than ninety (90) days prior to the filing of the bankruptcy petition.