# Snodgrass' Appeal.

To entitle a joint debt against two persons, who were in partnership at the time the instrument of indebtedness was executed, to a preference over a debt against one of the partners, out of the proceeds of sale of partnership property, it must appear *affirmatively* that it was contracted on the partnership account.

THIS was an appeal from the decree of the Common Pleas of Cumberland, distributing certain money arising from a sheriff's sale.   The property was sold on various executions.

The first execution received by the sheriff was a *fi. fa.* for the use of Jules Hauel *vs*. Wm. D. E. Hayes and William A Kelso, for 161,36 and interest.

The levy by the sheriff on this execution is as follows : "levied the interest of William A. Kelso in two horses, two stove wagons, two sleighs, cooking stoves, &c., held jointly by the said Kelso, with Jacob Fridley ; advertised and sold *said property*, having in my hand at the time a subsequent execution against said Kelso & Fridley, and the money arising from the said·sale considered in court for appropriation."   It was not merely *the interest of Kelso* which was sold, but the property.

On the 14th June, 1849, *fi. fa.* No. 44, August term, 1849, in favor of Thomas Beaver, Christian Long, Benjamin Snodgrass, Rebecca Fleming, Henry Hollar, George McGinnis, Wm. McClelland, Jacob Rheem, John B. Martin and others, *vs*. Jacob Fridley and Wm. A. Kelso, was put into the hands of the sheriff.— For real debt $2677,83.   Interest from 14th of June, 1840.

On which the sheriff levied as follows : "levied on two horses,

two stove wagons, two sleighs, cooking stoves, &c., advertised and sold the same, the interest of Wm. A. Kelso, in said property having been previously levied on a prior execution against him—proceeds of sale considered in court for appropriation."

Fridley & Kelso had been in partnership for one or two years before, and were in partnership in carrying on the Union Foundry at the time they gave their judgment bond to the plaintiffs in this judgment,—the 15th of June, 1849, on which *fi. fa.* No. 44, August term, 1849, issued, and continued so until the property was sold by the sheriff on that execution.

It was testified that with the exception of $10,03, the property sold was the property of Fridley & Kelso, at the Union Foundry; that there was but one sale of that property on the two executions. That as between Hayes & Kelso, that Hayes paid $50 on account, and that both he and Kelso said that Kelso was to pay the balance, that he owed the balance of the debt. The latter execution claimed *the whole fund.*

The court below were of opinion that it was not sufficient to give the last execution (No. 44, August term, 1849,) a preference over the first, that it was against Fridley & Kelso *jointly*, and that they were partners at the time; that it must appear *affirmatively* the judgment bond was for a partnership debt—that this does *not* appear from the evidence, which they held essential to the right of the second execution creditors, "and therefore decree, that the money in court be paid first to the balance of the execution in favor of Jules Hauel, (No. 7, August term, 1849,) and the residue to the execution of Beaver, Long and others, and direct the Prothonotary to calculate the amount payable to each on the principles of this decree.

Error assigned:

"The court erred in decreeing any part of the money to *fi. fa.* No. 7, August term, 1849." This was the first execution.

Argued by *Hepburn*, for appellant.—He contended that to constitute a *joint* creditor of a firm, it is not necessary that his security should be, in the partnership name or style. That partnership debts are those for which an action, if brought, must be *against all the parties constituting the firm; Collyer on Partnership* 517; 5 *Johns. Ch.* 327; 1 *Ves. Jr.* 241; *Story on Part.* 526; 9 *Barr* 124, 128.

*Colwell*, contra, cited 6 *Ves.* 119, *ex parte* Ruffin; 9 *Greenleaf Rep.* 28 ; 1 *Penn. Rep.* 204; 5 *S.* & *R.* 92.

The opinion of the court was delivered by
Bell, J.—The right of Jules Hauel to take of the money in

court, the amount called for by his execution is questioned only on the assertion that the judgment upon which the subsequent execution is founded, was given to secure the payment of partnership debts due from Fridley & Kelso to the appellants. As the fund for distribution arises from a sale of the partnership effects, the fact asserted is of the first importance, and must have been so esteemed throughout the inquiry. But no proof of it was given below, though the court pointed to the necessity and called for the production of it. *We* are equally uninformed on this point, and I think it must now be conceded the first execution creditor is entitled to be paid, unless indeed, the imputed character of the debts secured by the second judgment, can be sufficiently ascertained from the nature of the security executed and delivered by the debtors to the appellants. The latter insist that as this is a joint and several bond, sealed by both the partners, it must necessarily be regarded as given by them in consideration of a precedent partnership liability. But that this is very far from being a necessary conclusion is shewn by the Commercial Bank *vs.* Wilkins, 9 *Greenl.* 25, where in a contest, in almost every respect like the present it was referred to a jury to ascertain, under the evidence, whether a joint and several note made by partners, was given for a debt due from the firm; there being no direct evidence upon that point. Ordinarily one partner cannot bind his fellows by specialty; the creation of this species of obligation being without the general range of a partner's authority, though doubtless a bond executed by all the partners, may be sustained as the deed of the association. But in the application of partnership funds, in order to give such a bond a preference over separate creditors, it is not enough that all the partners are parties to it. To confer on it that advantage, it must affirmatively appear the sum secured by it is a debt created on partnership account. Without this the equity of the several members of the firm, upon which the accidental advantage of the joint creditor wholly depends, has no existence.— In administering bankrupt estates under a joint commission, it seems to be settled, after some fluctuation of opinion and practice, that joint debts are first payable out of the joint effects, and that holders of joint and several bonds, may elect whether they will claim from the joint or from the several fund. The appellants have called our attention to this rule as recognizing the right of every joint creditor of the partners to come in on the partnership effects, whether the debt be contracted by the firm or not. But this I conceive is a misapprehension, originating in the generality of terms used by some of those jurists who have been called to discuss the subject of marshalling bankrupt effects. The rule referred to, probably owes its origin to the equity I have glanced at, flowing from the contract of partnership. If it does not, it must be esteemed an anomaly produced by the supposed exigencies of

a peculiar system. There has been much dispute about it, and it has been said it now stands more upon the ground of authority and the maxim *stare decisis*, than upon any equitable reasoning. Even regarded as derived from the rights of the several partners, it has been found difficult to assign an adequate reason for the practice, since under a joint commission of bankruptcy, the partners being personally discharged, they can have no interest in the application of the assigned property, and consequently, their before subsisting equity ought not to be found vigorous enough, incidentally, to prefer one class of creditors over another; Doner *vs.* Stouffer, 1 *P. R.* 203, 4. Many therefore, denying that it has any foundation in equitable considerations, put it altogether on the ground of convenience. However, this may be, if it can be made to embrace joint claims, other than those that strictly spring from partnership, it is thought to be inapplicable, in its extended operation under separate commissions, (*ex parte Ruffin* 6, *Ves.* 126) and certainly is so in the case of an execution; Taylor *vs.* Fields, 4 *Ves.* 396.

But the decree appealed from may also be supported on other grounds. As already hinted, in administering partnership funds, preference is given to joint creditors, not from any merit residing in them, or because, considered in reference to themselves alone, they are vested with rights superior to the separate creditors. The equity, from the operation of which they derive the incidental advantage, appertains to the partners, and arises from the nature of the contract of partnership. This equity springing from their community of interest, in the capital stock and effects of the partnership, is to have the avails of these applied in discharge of their mutual liabilities, before any individual of their number is permitted to apply the joint property to his private uses. As between themselves each is said to have a specific lien on the present and future property of the association, as well to secure payment of debts due to third persons, as for his own share of the joint effects. It is by the working of this equity the partnership creditors are first let in on the partnership funds, and only because it is necessary to the administration of justice between the partners; *exparte Ruffin*, 6 *Ves.* 119; *exparte Williams*, 11 *Ves.* 5, 6; Bell *vs.* Newman, 5 *S. & R.* 85. In the first of these cases Lord ELDON, following the lead of prior authorities, declared that what is partnership property shall remain so, not as the rights of the creditors, but as the rights of the partners themselves require; and that it is through the medium of the equities subsisting between partners, the joint creditors have an opportunity they would not otherwise enjoy. In the much considered case of Doner *vs.* Stauffer, *supra*, it was well remarked by the present Chief Justice, "that in moulding the law of partnership into its present form, the credit gained by giving the joint creditor a preference

[Snodgrass' Appeal.]

was, if an object at all, a very remote one.  Accordingly with the single exception of a joint commission, we find that whenever the partners are not individually involved, the joint creditors have no preference whatever ; as in the instance of a *bona fide* assignment of the effects to one of the partners, after the partnership has been dissolved."

I repeat this familiar doctrine, not to re-assert what long since the profession has received as indisputable law, but in connection with the facts found here, to recal the principle that any advantage enjoyed by the joint creditors, is wholly dependent on the equity residing in the partners themselves.  When *this* has no existence, *that* cannot take place.

On the 23rd of April, 1849, the appellee's execution was put into the sheriff's hands.  He levied on the partnership effects and was about to proceed in further execution of his writ, when Fridley, Kelso's partner, interfered and caused the sheriff to pause, by an intimation that he, Fridley, would pay the money himself, rather than the goods should be brought to sale.  A short time after, the sheriff, declining to wait longer on Kelso—who it seems entertained a hope of raising the amount—informed Fridley he would advertise a sale if the money was not made up.  Upon this threat Fridley promised to pay it, and did shortly after pay a portion, again promising to call within a day or two, and discharge the balance.  Trusting to this, the sheriff further forbore a sale. While the matter was thus pending, under the suggestion of Fridley, the judgment by which the appellants claim, was confessed. At the time Fridley interfered, the first execution creditor had a lien on Kelso's interest in the goods levied, which might have been made available by a sale ; *Story on Part.* sec. 261, *et seq.*  The sheriff expressly testifies he would have sold that interest but for what Fridley said.  It might have been impossible to ascertain its value, before settlement of a partnership account, yet as the purchaser would have come in, as tenant in common with the other partner, and been thus vested with the right to force an account, under the act giving equity jurisdiction to our courts in such cases, the interest of the partner dependant might have sold for sufficient to satisfy the execution.  At all events, we cannot say it would not, more especially in the absence of any proof, showing the extent to which the firm was then involved.  We may imagine the judgment last confessed was suffered to secure pre-existing debts but that must be all.  There is no evidence of it.  From aught that appears, those debts may have originated at a period posterior to the first levy.  Under all the circumstances I have adverted to, it is impossible to say Fridley, as partner, was clothed with any such equity as could interfere to defeat Hauel's execution.— To permit it would be to promote the triumph of a fraud, initiated by a faithless promise, and consummated by deterring the officer

[Snodgrass' Appeal.]

in the execution of his duty until the appellee lost the advantage of his priority—or would lose it were this attempt successful.    I take it Fridley's promise to pay in consideration of forbearing a sale, was binding upon him, and he cannot now set up a supposed equity, personal to himself, to avoid the effect of it.    Much less can third persons do so.    As then, the appellants must assert their claimed priority through him, they may be answered in the language of Lord Eldon, in *ex parte Ruffin*, "if it is necessary for them to operate their relief through this equity, *he has no equity*;" at least as against the appellee.

The case might be put on the farther ground that the first seizure in execution dissolved the partnership ; *Story on Part.* sec. 311, and cases there cited.    A consequence of this would be, that the late partners could not afterwards create joint debts, in detriment of prior creditors.    I have already said we are without proof the debts of the appellants existed before the dates of the bonds, given to secure them.    They have left us wholly in the dark in this particular, except that two of the obligees declared they have no interest in the matter.

Decree affirmed.