## In re BENGAL TRADING CORPORATION, Debtor.

### George KOCI, Plaintiff,

v.

### Herbert FREEHLING, Trustee of Bengal Trading Corporation, Defendant.

Bankruptcy No. 80–01471–BKC–JAG.
Adv. No. 81–0106–BKC–JAG–A.

United States Bankruptcy Court,
S. D. Florida.

June 17, 1981.

696

Paul G. Hyman, Jr., Britton, Cohen, Kaufman, Benson & Schantz, Miami, Fla., for Trustee.

Carl Schmitt, Frank, Strelkow & Gay, North Bay Village, Fla., for plaintiff.

Herbert S. Freehling, Fort Lauderdale, Fla., Trustee.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

This matter was tried before this court on the complaint of George Koci against the trustee of this estate, seeking the return to George Koci of $46,400.

The facts are essentially undisputed. Debtor, Bengal Trading Corporation, (Bengal) was a commodities futures commission merchant. Pursuant to 7 U.S.C. § 6f, as detailed in the Commodity Futures Trading Commission's regulation, (17 C.F.R. § 1.17) Bengal was required to meet certain financial standards. Any futures commission merchant who becomes unable to comply with these requirements "must transfer all customer accounts and immediately cease doing business as a futures commission merchant until such time as the registrant is able to demonstrate such compliance," except that it may trade for liquidation purposes. Reg. § 1.17(a)(4).

On or about Monday, November 10, 1980, Paul Clancey, president of the debtor, learned that Bengal was not in compliance with the minimum financial requirements. On November 10, 1980, he sent a telegram so notifying the Commodities Futures Trading Commission and he immediately instructed his sales and office personnel to cease non-liquidation trading.

Meanwhile, plaintiff George Koci, who was unaware of the foregoing, wired funds from California to Bengal, intending to have them committed to the market. The wired funds, in the amount of $46,400, were deposited into Bengal's segregated customers' account on Tuesday, November 11, 1980. This was an account maintained according to 7 U.S.C. § 6d regulations which segregated the customers' funds from Bengal's own, although all customers' funds may be, and were, combined in the one account.

An interim trustee was appointed on November 12, 1980. He returned, undeposited, all customer checks received by him. However, the trustee takes the position that since Koci's wire transfer caused his funds to be actually deposited into Bengal's customers' account, they became a part of the total "customer property" (defined at 11 U.S.C. § 761(10)) held by Bengal. The trustee maintains that, as such, and even though it is specifically identifiable, the amount of the wire transfer may not be directly returned to Koci, but must be distributed ratably with all other customer property according to the terms of 11 U.S.C. § 766(h).

This court would agree with the trustee if Bengal had been in a position to do business at the time Koci's funds were received. However, it was precluded by law from accepting and handling his money at the time it was transferred. Although the wire transfer was accepted by Bengal's bank, the receipt was of no more effect than the receipt of funds accidentally deposited to a wrong account. Since under Reg. § 1.17(a)(4), Bengal was automatically prohibited from doing business as a futures commission merchant, Koci could not become a customer of Bengal's as to the $46,400, and the funds could not become customer property, and did not come into the bankruptcy estate. Therefore, they must be returned to the plaintiff.

Pursuant to Bankruptcy Rule 921(a), a Judgment incorporating these Findings and Conclusions is being entered this date.