**In re Paul Chris GIANAKAS, Debtor.**

**Karen GIANAKAS, Plaintiff,**

v.

**Paul Chris GIANAKAS, Defendant.**

**Civ. A. No. 89–1500.**
**Bankruptcy No. 88–2647.**

United States District Court,
W.D. Pennsylvania.

March 22, 1990.

Francis E. Corbett, Pittsburgh, Pa., for Paul Gianakas.

Richard J. Kelly, Pittsburgh, Pa., for Karen Gianakas.

Joseph J. Bernstein, trustee, Pittsburgh, Pa.

## MEMORANDUM OPINION

BLOCH, District Judge.

### I. Facts

Debtor Paul Gianakas appeals an order of the United States Bankruptcy Court for the Western District of Pennsylvania determining that a claim of his ex-wife, Karen Gianakas, is exempt from automatic stay and nondischargeable because it is in the nature of alimony, maintenance or support.

Paul and Karen Gianakas were divorced in March, 1983. A settlement agreement signed by the parties was incorporated into the divorce decree. At the time the agreement was signed, Paul Gianakas earned a salary of about $2,400 per month. At that time, Karen Gianakas was not employed.

The settlement agreement provided that Karen Gianakas would receive full title to the marital home, that she would pay the first mortgage on the home and a mortgage on an attached garage, and that Paul Gianakas would pay until satisfied the second mortgage on the marital home. The agreement also provided that Paul Gianakas would make child support payments while the Gianakas' children are under the age of 18 and would help finance his children's college education.

In January of 1988, Karen Gianakas stopped receiving alimony payments, as per the agreement. Also at that time, Paul Gianakas stopped making the second mortgage payments required by the settlement agreement.

On October 3, 1988, Paul Gianakas filed a claim for relief under Chapter 7 of the United States Bankruptcy Code. On November 14, 1988, Karen Gianakas filed a motion for determination that the second mortgage payments were not subject to automatic stay because they were in the nature of alimony, maintenance or support.

On February 13, 1989, the bankruptcy court held an evidentiary hearing to determine if the pre-petition arrearages on the second mortgage payments were subject to the automatic stay.[1] At the hearing before the bankruptcy court, Karen Gianakas testified as to her income and expenses. At the time of the divorce, Karen Gianakas was earning no income. Ms. Gianakas stated that, at the time of the divorce, if she had had to pay the second mortgage, she could not maintain her home. (Tr. 2/13/89, at 20, *In re Gianakas*, No. 88–2647 (Bankr. W.D.Pa.)). She testified that it was her intent, upon entering into the settlement agreement, that the second mortgage would be paid by Paul Gianakas so that she and the children could continue to live in the home. (*Id.* at 22).

Paul Gianakas testified that he intended the second mortgage payment as part of the equitable distribution of the couple's assets. (*Id.* at 46). He stated that he also intended that Karen and the children would maintain and live in the home. (*Id.* at 51).

The bankruptcy court determined that the second mortgage obligation was in the nature of alimony, maintenance or support. The bankruptcy court found that the debtor intended that Karen Gianakas and the children remain in the residence, that the second mortgage payment was needed to support and maintain the family, that the effect of the assumption of the mortgage was "to provide what is necessary to insure the children's daily needs are satisfied," *In re Gianakas*, 100 B.R. 787, 789 (Bankr.W. D.Pa. 6/9/89), that Karen Gianakas was not able to pay the second mortgage at the time the agreement was signed, that the obligation to support one's children includes providing shelter, and that the parties intended upon entering into the settlement agreement that the second mortgage payments would be in the nature of maintenance or support.

On appeal to this Court, Paul Gianakas asks us to reverse the bankruptcy court's determination that his obligation to make a second mortgage payment is not subject to the automatic stay and is nondischargeable under 11 U.S.C. § 362(a) and 11 U.S.C. § 523(a)(5).

## II. Jurisdiction

This Court has jurisdiction to hear appeals from final judgments, orders and decrees of the bankruptcy court. 28 U.S.C. § 158(a). This Court also has discretionary jurisdiction to hear appeals from interlocutory orders and decrees of bankruptcy judges either granted in response to a party's motion for leave to appeal under Bankr.R. 8001(b) or *sua sponte* when no motion for leave to appeal is filed but a notice of appeal is timely filed. Bankr.R. 8003(c). No party has made a motion for leave to appeal. Therefore, this Court has jurisdiction if the order of the bankruptcy court below is a final order or if this Court chooses to hear the appeal in its discretion.

A bankruptcy court order granting or denying a creditor relief from an automatic stay, even though the bankruptcy litigation will continue as a whole, is final and appealable. *In re Amatex Corp.*, 755 F.2d 1034 (3d Cir.1985); *In re Comer*, 716 F.2d 168 (3d Cir.1983).[2] Therefore, the

1. At that hearing, both parties agreed that, because all procedural and evidentiary safeguards were in place, the proceeding could be deemed an adversarial one, allowing the court to determine dischargeability as well.

2. Determining whether to grant relief from an automatic stay requires a different inquiry by the Court than determining whether an obligation is exempt from the automatic stay. In the latter case, the issue is whether the character of the obligation can be classified into one of the exemption categories. If the obligation is exempt, the movant may proceed against the nonestate assets of the debtor. In the former case, the stay imposed by the bankruptcy court on proceedings against property the creditor wishes to claim is lifted for cause shown. However, this Court finds that the question of finality is similar in both instances.

bankruptcy court's order granting Ms. Gianakas relief from the automatic stay provisions of 11 U.S.C. § 362 is a final order. This Court thus has jurisdiction to hear the present appeal.[3]

### III. Discussion

■ Findings of fact by the bankruptcy court are reviewable only for clear error, and legal questions are subject to plenary review. *Brown v. Pennsylvania State Employees' Credit Union,* 851 F.2d 81 (3d Cir.1988). "Due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankr.R. 8013.

■ Paul Gianakas asserts that the trial court improperly placed the burden of proof on him to prove dischargeability of the second mortgage payments. The bankruptcy judge stated that the burden was on Paul Gianakas to prove that the obligation was not alimony, maintenance or support. (Tr., 2/13/89, at 70.) Such allocation of the burden of proof was incorrect. The party objecting to discharge, here Karen Gianakas, has the burden of proving that the debt is in the nature of alimony, maintenance or support. Bankr. R. 4005; *Schlect v. Thornton,* 544 F.2d 1005, 1006 (9th Cir. 1976); *Household Finance Corp. v. Danns,* 558 F.2d 114, 116 (2d Cir.1977); *In re Kleppinger,* 27 B.R. 530, 531 (Bankr.M. D.Pa.1982), *quoted in In re Alloway,* 37 B.R. 420, 423 (Bankr.E.D.Pa.1984). This Court will review the bankruptcy court's findings in light of the burden of proof placed upon Ms. Gianakas.

Congress chose to exempt alimony, maintenance and support payments and make them nondischargeable in bankruptcy. Congress balanced the interests of the Bankruptcy Code, which gives a debtor a fresh start free of pre-existing debts after discharge, and the weighty state interests requiring people to help support their families after divorce. Congress did not intend to provide immunity from bankruptcy for all debts between a divorcing husband and wife. To receive protection, the debts must actually be in the nature of alimony, maintenance or support, as opposed to a settlement of property between the parties.

■ Title 11 U.S.C. § 362(b)(2) states: "The filing of a petition in bankruptcy does not operate as a stay ... of the collection of alimony, maintenance, or support from property that is not property of the estate." Title 11 U.S.C. § 523(a)(5) states, in part:

A discharge under § 724 ... does not discharge an individual debtor from any debt ... (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or such spouse and child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that ... (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.[4]

■ The determination of whether a debt constitutes alimony, maintenance or support is to be made according to federal law. H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977), *reprinted in* 1978 U.S. Code Cong. and Admin.News 5787, 6320; S.R. No. 989, 95th Cong., 2nd Sess. 79 (1978), *reprinted in* 1978 U.S.Code Cong. and Admin.News 5787, 5865.

■ When courts determine whether a debt is actually in the nature of alimony, maintenance or support, the intent of the parties when creating the agreement is generally viewed as the most important fact a court should consider. *In re Chedrick,* 98 B.R. 731, 733 (W.D.Pa.1989); *In re Miller,* 34 B.R. 289 (Bankr.E.D.Pa.1983).

---

3. This Court would chose to exercise its discretion and consider this appeal *sua sponte* even if the order were not final. Bankr.R. 8003(c).

4. The determination by the court below and by this Court that an obligation is in the nature of alimony, maintenance or support is the same

inquiry whether the court is determining dischargeability of the debt or exemption from the automatic stay allowing the movant to proceed against non-estate assets of the debtor. *In re Mack,* 46 B.R. 652, 656 n. 6 (Bankr.E.D.Pa. 1985).

At the time the debtor entered into the settlement agreement, whether the debtor intended that the obligations under the settlement agreement would be in the nature of support or in the nature of a contract to equalize a division of property is clearly relevant to determining whether the debt is characterized as nondischargeable support.[5]

If it is not clear that the parties intended the obligation to be in the nature of alimony, maintenance or support, the inquiry should not end at this point.

> [V]ery often the parties have no intent to differentiate between an alimony debt and a property settlement debt and will view both merely as financial obligations arising from the separation or divorce. The parties would have no purpose or rationale in making the distinction without some awareness of the legal consequences of the choice such as that found in the disciplines of tax and bankruptcy law.

*In re Alloway*, 37 B.R. 420, 425 (Bankr.E. D.Pa.1984). Because the parties often do not have a clear intent as to the nature of the debt and because the proper inquiry for the bankruptcy court is not to determine the intent of the parties but to determine the nature of the debt, the court should also consider the financial circumstances of the parties and the function of the obligation. *See Miller*, 34 B.R. at 292. Some courts find that these factors are evidence of constructive intent of the parties thus making intent of the parties the only factor to be considered. *In the Matter of Coil*, 680 F.2d 1170 (7th Cir.1982); *Shaver v. Shaver*, 736 F.2d 1314 (9th Cir.1984).

The intent of the parties is to be discerned by interpreting the settlement agreement and the surrounding circumstances existing at the time of the agreement. *Chedrick*, 98 B.R. at 733. The language of the agreement is persuasive evidence of intent, but it is not determinative. *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir.1986). The parties' intent can be inferred from a variety of factors in the substance of the agreement, such as provisions that the obligation be paid in installments rather than a lump sum, that the obligation cease on death or remarriage of a spouse, the modifiability of that portion of the agreement, and many others. *In re Alloway*, 37 B.R. at 425.

Here, the second mortgage was not to terminate under the same conditions as the specifically designated alimony provisions. However, the payments would end at about the same time as the child support payments. The modifiability of the distribution is unclear, as is the treatment given to the obligations by the parties for tax purposes. The testimony of the parties indicated a predictable conflict in opinion as to whether the payments were intended to be alimony, maintenance or support.

At the hearing before the bankruptcy judge, both Paul and Karen Gianakas testified that it was their intent at the time the agreement was signed that Karen Gianakas and the children live in and maintain the home. (Tr. at 22, 29, 51). Karen Gianakas also testified that, at the time the agreement was signed, if she had had to pay the second mortgage, she could not have maintained the home.[6] Testimony of

---

5. The Sixth Circuit has found that, in some situations, intent is a threshold factor; that is, if the court cannot find the parties had an intent to create an obligation in the nature of alimony, maintenance or support, there can be no further inquiry into the nature of the obligation. *In re Calhoun*, 715 F.2d 1103, 1109 (1983). *Calhoun* is distinguishable from the present case. The issue in *Calhoun* was whether an obligation to hold a spouse harmless from mutually created debts was in the nature of alimony, maintenance or support. The obligation to pay a debt is different from an obligation to hold another harmless against collection of the debt after the debt is assumed. *Id.* at 1109 n. 9. A court

considering the nature of a hold harmless obligation should rely more heavily on the intent of the parties when determining whether the obligation is in the nature of alimony, maintenance or support. Assuming an obligation of paying an underlying debt is often more closely related to the ability and needs of the party to be relieved of the debt.

6. Karen Gianakas was forced to make the second mortgage payments at a later time. However, she was employed at that time and apparently borrowed money and depleted a savings account to make the second mortgage payments. It is clear that at the time the settlement

the parties and other evidence indicating that an obligation assumed by the debtor was necessary to maintain the home of his family and to "keep a roof over their heads" has been held sufficient to satisfy plaintiff's burden of showing that the intent of the agreement was to provide alimony, maintenance or support. *Poolman v. Poolman*, 289 F.2d 332 (8th Cir.1961); *In re Allshouse*, 34 B.R. 512 (Bankr.W.D.Pa. 1983).

■ The second factor which must be analyzed is the financial circumstances and needs of the parties at the time the obligation was created. Not all circuits agree that this factor has a place in the determination of the nature of the obligation. *See In re Harrell*, 754 F.2d 902 (11th Cir.1985) (improper to determine need—the correct inquiry is whether the obligation is in the nature of support. No precise inquiry into financial circumstances to determine precise levels of need or support is proper). However, this Court believes that the approach adopted today is the more reasonable one. As stated by the Court in *Miller*,

> if the payment of the debt in question was necessary for the reasonable support and maintenance of the debtor's spouse or former spouse and/or child or children at the time that the debtor assumed sole responsibility for the debt, and if the debtor's spouse or former spouse had been unable to pay the debt at that time according to its terms, the debt should normally be found to be nondischargeable pursuant to § 523(a)(5).

34 B.R. at 292.

The court below found that, at the time the agreement was signed, Karen Gianakas could not make the second mortgage payment. *In re Gianakas*, 100 B.R. at 789. Karen Gianakas was not employed at that time, was receiving $1,000 per month in child support and alimony, had no health insurance for herself, had mortgage payments to make, and had four children to support. Based on these facts, the bank-

ruptcy court found that Karen Gianakas needed the money to maintain the home.

■ Paul Gianakas claims that his income is currently insufficient to meet his debts. However, this Court may not consider the debtor's present financial circumstances. The Court may only consider the financial circumstances of the parties at the time the agreement was signed. *Chedrick*, 98 B.R. at 731.

The third factor for this Court to consider is the function that the obligation serves. The bankruptcy court found that the obligation is in the nature of child support. The Court found that the parties agreed that Paul Gianakas would pay for child support for all children at least until they reach the age of 18, and beyond if the children have a reasonable expectation of attending college. The second mortgage obligation extends a few months beyond the eighteenth birthday of the youngest child. However, child support will continue past the satisfaction of the second mortgage if the youngest child decides to attend college. Therefore, it is not unreasonable to assume that this obligation serves the function of child support.

This Court holds that the findings of fact by the court below that the intent of the parties was to create an obligation for support, that the needs of the parties imply that the obligation was for support and that the function of the obligation was to provide support are not clearly erroneous. These findings compel a conclusion that the obligation in question is nondischargeable pursuant to 11 U.S.C. § 523(a)(5) and is, therefore, not subject to the automatic stay of 11 U.S.C. § 362. Therefore, this Court will affirm the decision of the bankruptcy court.

An appropriate Order will be issued.

agreement was signed, Karen Gianakas would not have been able to make the second mortgage payments out of her regular income. The financial circumstances of the parties at the time the obligation was created are the only relevant financial circumstances to be considered. *Chedrick*, 98 B.R. 731.