In re **VISITING NURSE ASSOCIATION OF WESTERN PENNSYLVANIA,** Debtor.

**K. Lawrence KEMP, Trustee, Plaintiff/Appellant,**

v.

Otis **BOWEN, Secretary of Health and Human Services, United States of America, et al., Defendants/Appellees.**

**Civ. A. No. 89–2011.**
**Bankruptcy No. 88–649–PGH.**

United States District Court, W.D. Pennsylvania.

July 31, 1992.

K. Lawrence Kemp, Kemp & Kemp, New Kensington, Pa., for plaintiff/appellant.

Alan E. Cech, Office of U.S. Atty., Sanford B. Ferguson, Kirkpatrick & Lockhart, Pittsburgh, Pa., for defendants/appellees.

Blue Cross of Greater Philadelphia, Philadelphia, Pa., pro se.

## MEMORANDUM OPINION

LEWIS, District Judge.

By order of court dated July 12, 1989, 101 B.R. 462, the United States Bankruptcy Court for the Western District of Pennsylvania required appellant K. Lawrence Kemp, Trustee for the Visiting Nurse Association of Western Pennsylvania ("VNA"), and Vanguard Federal Savings Bank ("Vanguard") to return funds to appellee Otis Bowen, Secretary of Health and Human Services for the United States of

America. Appellant then filed this appeal, claiming the bankruptcy court erred in issuing the July 12, 1989 order.

The issues before this court on appeal are:

1. Whether the debtor [VNA] had a confidential relationship with the Department of Health and Human Services of the United States of America [("Medicare");]

2. Whether the debtor [VNA] was unjustly enriched by the receipt of a periodic interim payment for a period of time in which no services were rendered when it may have been ultimately entitled to receive the payment for the previous payment on the same contract[;]

3. Whether a constructive trust established under state law must be given effect in a bankruptcy context[; and]

4. Whether property subject to a constructive trust may nevertheless become an asset of the estate under 11 U.S.C. § 544(a).

Appellant's brief, p. 3; appellant's supplemental brief, p. 1; and appellee's brief, p. 1. This court recognizes jurisdiction over the appellant's appeal pursuant to 28 U.S.C. § 158 and affirms the bankruptcy court's opinion.

## FACTS

The relevant facts upon which the bankruptcy court based its decision appear in the stipulation of facts filed by the parties. According to the stipulation of facts, VNA provided home nursing services for which it received Medicare cost reimbursement pursuant to the Periodic Interim Payment Plan ("PIP") codified at 42 C.F.R. § 413.60. Stipulation of Facts, ¶¶ 1–2. Section 413.60 provides that bi-weekly estimated PIP payments be made to service providers throughout each year based on actual costs incurred by the provider during the previous accounting period, subject to various adjustments.[1] Additionally, section 413.-60(c) provides for a retroactive final settlement at the end of each accounting period based on verified reports of actual costs incurred by the provider during that period. Stipulation of Facts, ¶ 2. VNA received the bi-weekly PIP payments during 1987 based on 1986 costs plus adjustments. Stipulation of Facts, ¶ 3. A final settlement for 1987 has not been completed because VNA has neither filed nor verified final 1987 cost reports. Stipulation of Facts, ¶ 13.

By November 9, 1987, VNA had ceased providing patient services. By November 13, 1987, it terminated some but not all of its employees. Stipulation of Facts, ¶¶ 4, 5. Medicare received notice that VNA had ceased operations by telephone on December 22, 1987, and by letter dated December 29, 1987. Stipulation of Facts, ¶ 8. VNA had failed to effectively communicate its cessation of operations prior to the December 22, 1987 telephone conversation despite having directly communicated with Medicare on at least six separate occasions between November 13, 1987 and December 21, 1987. Stipulation of Facts, ¶ 6, Exhibits A–G.

On December 11, 1987, VNA received a $78,737.31 PIP payment from Medicare. On March 8, 1988, VNA filed a voluntary Chapter 7 bankruptcy petition. Between those dates, it had deposited the funds received from Medicare into a separate bank account, where they remained until Kemp, acting as VNA's Chapter 7 trustee, took possession of them. Stipulation of Facts, ¶ 10.

Kemp then filed a complaint to determine secured status and/or for declaratory judgment in bankruptcy court, arguing that the funds were property of the bankruptcy estate free of any claims. Vanguard agreed with Kemp and sought payment from the bankruptcy estate as a secured party. Medicare asserted that the funds were the

---

1. Pursuant to 42 C.F.R. § 413(h)(5), "[p]ayment will be made bi-weekly under the PIP method unless the provider requests a longer fixed interval (not to exceed one month) between payments. The payment amount will be computed by the intermediary to approximate, on the average, the costs of covered inpatient home health services furnished by the provider during the period for which the payment will be made two weeks after the end of such service." *See* Stipulation of Facts, ¶ 9.

property of the United States. It argued that VNA held the funds in a constructive trust, had breached its fiduciary duty, and would be unjustly enriched if it were allowed to retain the December PIP payment. Appellant's brief, pp. 2–3.

The United States Bankruptcy Court for the Western District of Pennsylvania, in an opinion and order by the Honorable Warren W. Bentz, held that the special nature of the PIP program gave rise to a confidential relationship between Medicare and VNA, imposing upon VNA a duty to notify Medicare promptly if it ceased operations. The bankruptcy court found that VNA would be unjustly enriched if it were allowed to keep the PIP payment. Therefore, it held that VNA possessed the PIP payment as a constructive trustee under Pennsylvania law. Finally, the bankruptcy court held that under Pennsylvania law the payment was not subject to the trustee's 11 U.S.C. § 544 strong-arm powers since neither a judgment creditor nor an execution creditor may prevail over the beneficiary of a constructive trust.

## DISCUSSION

### A. *Standard of Review*

It is well-established in the Third Circuit that "findings of fact by the bankruptcy court are reviewable only for clear error." *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988) (*citing* Bankruptcy Rule 8013); *e.g., In re Morrissey*, 717 F.2d 100, 104 (3d Cir.1983); *In re Gianakas*, 112 B.R. 737, 741 (W.D.Pa.), *aff'd*, 917 F.2d 759 (3d Cir.1990). Legal questions, however, are subject to plenary review. *Brown*, 851 F.2d at 84; *Gianakas*, 112 B.R. at 741.

### B. *Existence of a Confidential Relationship*

Appellant contends that, contrary to the bankruptcy court's findings, no confidential relationship existed between VNA and Medicare. After examining the law and record on appeal, this court affirms the bankruptcy court's finding.

Whether a constructive trust will be imposed is a question of fact in federal bankruptcy court proceedings. *In re Heston Oil Co.*, 63 B.R. 711, 714 (Bankr. N.D.Okla.1986). Furthermore, whether a constructive trust exists generally depends upon applicable state law. *Jaffke v. Dunham*, 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957); *Heston Oil*, 63 B.R. at 714. Under Pennsylvania law, a constructive trust exists where "(a) the transfer was procured by fraud, duress, undue influence or mistake *or* (b) the transferee at the time of the transfer was in a confidential relation to the transferor." *Metzger v. Metzger*, 338 Pa. 564, 569–570, 14 A.2d 285, 288 (1940) (*quoting* Restatement of Trusts, § 44) (emphasis in original); *see Buchanan v. Brentwood Federal Savings and Loan Assoc.*, 457 Pa. 135, 153, 320 A.2d 117, 127 (1974).

Therefore, since a constructive trust may be imposed if a confidential relationship exists, and since the issue of whether a constructive trust exists involves a question of fact in a federal bankruptcy court proceeding, this court finds it appropriate to review the bankruptcy court's confidential relationship finding under the clearly erroneous standard of review. *See also Buchanan*, 457 Pa. at 153, 320 A.2d at 127 (1974) ("A confidential relationship may be found as a matter of law ... but more often it is a matter of fact to be established by the evidence."); *Moreland v. Metrovich*, 249 Pa.Super. 88, 97, 375 A.2d 772, 776 (1977) ("A confidential relationship may be established as a matter of law or as a matter of fact."). Neither party cites any applicable case law to the contrary.

Accordingly, this court will not disturb the bankruptcy court's finding "unless the court is left with a definite and firm conviction that a mistake has been committed." *Brager v. Blum*, 49 B.R. 626 (E.D.Pa.1985) (*citing United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)).

The bankruptcy court held that a confidential relationship existed between VNA and Medicare because of the special nature of the PIP program. Appellant ar-

gues that the bankruptcy court erred in making this finding of fact under Pennsylvania law because to support such a finding it must be established that:

(1) "one occupies a superior position over the other—intellectually, physically, governmentally, or morally—with the opportunity to use that superiority to the others disadvantage," *Union Trust Co. of New Castle v. Cwynar,* 388 Pa. 644, 653, 131 A.2d 133, 137 (1957);

(2) one party must act for another, *Harrison v. Welsh,* 295 Pa. 501, 145 A. 507 (1929); or

(3) there is an overpowering influence on one side and weakness, dependence or trust on the other. *In re Estate of McClatchy,* 433 Pa. 232, 237, 249 A.2d 320, 322 (1969).

*See* appellant's brief, pp. 4–9.

After examining the law and record on appeal, however, this court finds appellant's reliance on *Union Trust, Harrison* and *McClatchy* to be misplaced precisely because of the special nature of the Medicare program. Therefore, this court cannot state that the bankruptcy court clearly erred in finding a confidential relationship.

As noted previously, the Medicare regulation at issue requires that "[i]nterim payments will be made as often as possible and in no event less frequently than once a month." 42 C.F.R. § 413.60(c). The estimated PIP payment is:

computed by the intermediary to approximate, on the average, the costs of covered inpatient home health services furnished by the provider during the period for which the payment is to be made, and each payment will be made two weeks after the end of such period of service.

42 C.F.R. § 413.64(h)(5). Thus, Medicare approximates the amounts of the PIP payments based on actual costs incurred by the provider in the previous accounting period, subject to various other adjustments. 42 C.F.R. § 413.64(f)(1).

The adjustments are to be made because of previously made overpayments or underpayments. 42 U.S.C. § 1395g(a). Additionally, section 1395g(a) mandates that:

[N]o such payments shall be made to any provider unless it has furnished such information as the Secretary may request in order to determine the amounts due such provider under this part for the period with respect to which the amounts are being paid or any prior period.

In *Union Trust,* 388 Pa. at 653, 131 A.2d at 137, the Supreme Court of Pennsylvania held that the female defendant did not stand in a confidential relationship with an 83–year old male incompetent because their relationship was one of non-familiar friendship with only sporadic contact. As demonstrated by the program outlined herein, *Union Trust* is inapposite because the relationship between VNA and Medicare was not sporadic and amounted to more than non-familiar friendship. In fact, Medicare and VNA had regular and consistent contact at least twice a month beginning on October 18, 1985 under the PIP program. Stipulation of Facts, ¶ 6, Exhibit G. Moreover, VNA directly contacted Medicare on at least six separate occasions between November 13, 1987 and December 21, 1987 alone. Therefore, *Union Trust* is inapposite because the special nature of the PIP program requires a non-sporadic relationship.

Similarly, in *Harrison,* the Supreme Court of Pennsylvania held that a confidential relationship did not exist between two experienced securities dealers because the plaintiff "had ample opportunity to secure such data as was necessary and desired ... and did not rely on any special knowledge of ... [the defendant], which was beyond his power to secure." *Harrison,* 295 Pa. at 508, 145 A. 507. In contrast, the program outlined herein demonstrates that Medicare relied on VNA's special knowledge concerning its continuation of operations and incurred costs. For example, 42 U.S.C. § 1395g(a) mandates that Medicare must wait for the provider to furnish requested information before a PIP payment can be made. Thus, although Medicare has an opportunity to obtain certain information, it is clear that Medicare must rely on the provider to furnish it. Medicare has no economically feasible means of obtaining

this information, which was easily accessible to VNA, independently. Therefore, *Harrison* does not control because of the special nature of the PIP program.

Finally, in *McClatchy*, the Supreme Court of Pennsylvania held that a confidential relationship did not exist between a defendant and the executors of his will because:

> [t]here ... [was] no evidence in the record that at the time decedent was unable to handle his financial and business affairs or was in any way so completely dependent upon the executors so as to create a confidential relationship which would then shift the burden onto the executors to prove the absence of fraud and that the transaction was fair and equitable.

*McClatchy*, 433 Pa. at 237–38, 249 A.2d at 322–23. As demonstrated by the program outlined herein, *McClatchy* is inapposite because Medicare could not make adjustments to the PIP payments without information provided by VNA, upon whom Medicare completely relied for such information. *See* 42 U.S.C. § 1395g(a).

Therefore, this court affirms the bankruptcy court's confidential relationship finding because of the non-sporadic, consistent contacts between Medicare and VNA, and Medicare's reliance on VNA, under the PIP program.

■ Consistent with this holding, this court also affirms the bankruptcy court's determination that VNA had a duty to notify Medicare promptly of its cessation of operations. In so holding, the bankruptcy court relied upon *Young v. Kaye*, 443 Pa. 335, 279 A.2d 759 (1971). In *Young*, the Supreme Court of Pennsylvania stated that:

> [w]hen the relationship between persons is one of trust and confidence, the party in whom the trust and confidence are reposed must act with scrupulous fairness and good faith in his dealings with

the other and remain from using his position to the other's detriment and his own advantage.

*Young*, 443 Pa. at 342, 279 A.2d at 763. *See, e.g., Popovitch v. Kasperlik*, 70 F.Supp. 376 (W.D.Pa.1947); *McCown v. Fraser*, 327 Pa. 561, 192 A. 674 (1937). An affirmative showing of fraud is not required. *Young*, 443 Pa. at 342, 279 A.2d 759.

The appellant asserts that the bankruptcy court erred in finding that VNA had a duty to inform Medicare that it had ceased operations because a debtor and a creditor do not occupy a relation of confidence so as to impose upon the debtor a duty to disclose material facts to the creditor. Appellant's brief, p. 5. The appellant relies on *Sankey v. McElevky*, 104 Pa. 265 (1883), and *Federal Land Bank of Baltimore v. Fetner*, 269 Pa.Super. 455, 410 A.2d 344 (1979), *cert. denied* 446 U.S. 918, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980).

To the contrary, however, both *Sankey* and *Federal Land Bank of Baltimore* indicate that a debtor may have a duty to inform his or her creditor when there exists an independent basis for a confidential relationship, other than simply the debtor/creditor relationship, between the two. *Sankey*, 104 Pa. at 270 (a mere debtor/creditor relationship is not one of trust and confidence); *Federal Land Bank of Baltimore*, 269 Pa.Super. at 461, 410 A.2d at 348.

■ As noted above, VNA and Medicare were not merely debtor and creditor. An independent confidential relationship existed between the parties based upon the special nature of the PIP program long before VNA became a debtor and Medicare a creditor. Therefore, this court finds both *Sankey* and *Federal Land Bank of Baltimore* inapposite to the issues presented in this appeal and affirms the bankruptcy court's imposition of a duty on VNA to inform Medicare of its cessation of business.[2]

---

**2.** Furthermore, the bankruptcy court's finding that VNA did not act with good faith is not clearly erroneous, given the stipulation of facts which indicates possible conscious neglect on VNA's part in that VNA contacted Medicare on

at least six separate occasions from November 9, 1987 through December 21, 1987, without effectively communicating its cessation of operations to Medicare. Further, VNA ensured that it received the December 11, 1987 PIP payment

Therefore, this court affirms each of the bankruptcy court's findings and determinations as to the first issue presented on this appeal.

## C. *Unjust Enrichment*

■ Appellant also contests the bankruptcy court's finding that VNA would be unjustly enriched if it were permitted to keep the December 11, 1987 PIP payment. After examining the law and record on appeal, however, this court will affirm.

Under Pennsylvania law, " '[a] constructive trust [also] arises where a person who holds title to a property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.' " *Buchanan*, 457 Pa. at 150–151, 320 A.2d at 126 (*quoting* 5 A. Scott, Law of Trusts § 642, at 3413 (3d. ed. 1967)); *see Moreland*, 249 Pa.Super. at 97, 375 A.2d at 776. "[A] constructive trust will arise whenever justice or the need for fair dealing warrants it." *Buchanan*, 457 Pa. at 155, 320 A.2d at 128.[3]

In *Moreland*, 249 Pa.Super. at 97, 375 A.2d at 776, the state court held that a decedent's estate was not unjustly enriched because the record established that the decedent had received the disputed property as a gift from his wife's sister. The court expressly found that the decedent did not "unfairly exercise an advantage stemming from superior knowledge or influence to compel [his wife's sister] to transfer the land." *Id.*

As previously discussed, however, VNA exercised an advantage over Medicare stemming from its superior knowledge of its business operations upon which Medicare relied because of the special nature of the PIP program. Without knowing that VNA had ceased operations, Medicare was unable to make adjustments to the PIP

payment pursuant to 42 U.S.C. § 1395g(a). Therefore, VNA received the December 11, 1987 PIP payment in the amount of $78,737.31 as reimbursement for services it never rendered.

The appellant asserts that the bankruptcy court erred because on December 11, 1987, VNA "was still an entity capable of resuming its business" and, therefore, that "Medicare is no different a position than persons who make down payments for services or goods which are not performed or delivered before the debtor enters bankruptcy." Appellant's brief, p. 10. He also claims that VNA was not unjustly enriched because a final settlement to determine whether Medicare owes VNA additional reimbursement for the actual costs of services rendered prior to its ceasing operations has never been completed. Appellant's brief, p. 8; appellant's supplemental brief, p. 2.

This court finds the appellant's arguments unpersuasive because section 413(h)(5) expressly states that "[t]he payment will be computed by the intermediary to approximate ... the costs of covered inpatient home health services *furnished* by the provider during the period for which the payment will be made two weeks after the end of such service." 42 C.F.R. § 413(h)(5) (emphasis added). Thus it is clear that the December 11, 1987 PIP payment was intended to reimburse VNA for services rendered from November 14, 1987 to November 27, 1987, and not to serve as a down payment for services to be rendered in the future.

VNA ceased operations on November 9, 1992; terminated most of its employees on November 13, 1987; and rendered no services to patients during the period from November 14, 1987 to November 27, 1987. Stipulation of Facts, ¶¶ 4, 5. Therefore, if VNA were allowed to keep the PIP pay-

by making special arrangements to have the payment personally retrieved by a representative of the agency. Stipulation of Facts, ¶ 6, Exhibits A–G, ¶ 7.

**3.** As neither party cites any contrary authority, this court finds it appropriate to apply the clearly erroneous standard in reviewing this unjust

enrichment issue. After all, unjust enrichment and equity principles are clearly bases upon which a constructive trust may arise under Pennsylvania state law, and whether a constructive trust *will be imposed* is a question of fact in federal bankruptcy court proceedings. *In re Heston Oil Co.*, 63 B.R. at 714.

ment, the express intention behind section 413(h)(5) would be violated.

Further, that a final settlement for 1987 has yet to be completed is not dispositive concerning the unjust enrichment issue. Section 1395g(a) provides for adjustments to be made to the PIP payments throughout each year based on information given to Medicare by the provider. As affirmed herein, VNA had a duty to inform Medicare of its cessation of operations because of the special nature of the PIP program. Had VNA so informed Medicare, the PIP payment would have been adjusted, and the final settlement would not have been an issue. Medicare would have been able to exercise its statutory remedy because it would have had reliable evidence of VNA's financial difficulties.

These findings hardly lead to a conclusion that the bankruptcy court's unjust enrichment finding is clearly erroneous. If VNA believes it is entitled to additional reimbursement for services provided before it ceased operations, VNA should file the final cost reports for 1987 as it is required to do before costs can be verified, and a settlement can be conducted pursuant to section 413.64(f). *See* 42 C.F.R. § 405.406(b); 42 U.S.C. § 1395g.

In summary, then, this court affirms the imposition of a constructive trust on the PIP payment, given its affirmation of the bankruptcy court's confidential relation and unjust enrichment findings. It is well-established under Pennsylvania law that a constructive trust arises when a confidential relationship or unjust enrichment is found to have existed. *See Metzger,* 338 Pa. at 569–570, 14 A.2d at 288 (1940); *Buchanan,* 457 Pa. at 153, 320 A.2d at 126, 127.

D. *Effect of a Constructive Trust in Bankruptcy*

■ Appellant next argues that, even if the bankruptcy court was correct in imposing a constructive trust, it should not have given effect to the constructive trust in this case because the PIP payment at issue had become part of VNA's estate in bankruptcy. After plenary review, this court holds that a constructive trust established under state law may be given effect in this context and, therefore, affirms the order of the bankruptcy court in this regard.

■ Once a bankruptcy court makes a determination concerning whether a debtor has any legal or equitable interest in property based upon applicable state law, "whether the property will come into the estate is a federal question." *In re Hurricane Elkhorn Coal Corp. II,* 19 B.R. 609, 615 (Bankr.W.D.Ky.1982); *In re Vermont Real Estate Investment Trust,* 25 B.R. 813, 816 (Bankr.D.Vt.1982). In this case, the bankruptcy court found, and this court has affirmed, that VNA held the December 11, 1987 PIP payment as a constructive trustee for Medicare under Pennsylvania law. Once that has been determined, whether a constructive trust should be given effect so as to prevent the PIP payment from becoming part of VNA's estate is a federal question governed by applicable federal law.

■ Under the Bankruptcy Code, constructive trusts are given effect where a relationship of trust and confidence existed between the parties and the debtor suspended its operations prior to receiving the transferred property. In that case, the property does not become part of the bankruptcy estate under 11 U.S.C. § 541. *See e.g., In re Vermont Real Estate Investment Trust,* 25 B.R. at 816–817; *In re Hurricane Elkhorn Coal Corp. II,* 19 B.R. at 615; *In re Bengal Trading Corp.,* 12 B.R. 695 (Bankr.S.D.Fla.1981).

*In re Vermont Real Estate Investment Trust* is dispositive regarding the third issue presented in this appeal. In *Vermont Real Estate Investment Trust,* the plaintiff brought an adversary action to recover funds received by the Vermont Real Estate Investment Trust ("Vermont Trust") for the purchase of securities after Vermont Trust had suspended operations. Neither Vermont Trust nor any of its representatives contacted the plaintiff in order to halt the transfer. Vermont Trust subsequently filed for reorganization in bankruptcy and claimed that the plaintiff's funds were part

of its estate. The plaintiff asserted that the funds should not be included as part of Vermont Trust's estate because the funds were held by Vermont Trust in a constructive trust.

The bankruptcy court found the imposition of a constructive trust proper under Vermont state law based upon its finding of a confidential relationship between the parties. Therefore, the court held that:

> [w]ith the cessation of operations the Trustees of the debtor were unable to and did fail to carry out their commitment with the end result that a constructive trust was created in the funds for the benefit of the plaintiff[; and that, therefore,] [i]t necessarily follows that these funds did not come into the bankruptcy estate and must be returned to the plaintiff. *In re Bengal Trading Corp., supra. In re Hurricane Elkhorn Coal Corp. II, supra.*

*In re Vermont Real Estate Investment Trust,* 25 B.R. at 814–815.

Analogously, VNA ceased operations on November 9, 1987, prior to receiving the December 11, 1987 PIP payment from Medicare. Stipulation of Facts, ¶ 4. Moreover, VNA's termination of most of its employees on November 13, 1987, precluded it from rendering any patient services during the period between November 14, 1987 and November 27, 1987. Indeed, VNA rendered no patient services during this time. *See* Stipulation of Facts, ¶ 5. Finally, as in *Vermont Real Estate Investment Trust,* a confidential relationship existed between VNA and Medicare, resulting in the imposition of a constructive trust on the December 11, 1987 PIP payment for Medicare's benefit under Pennsylvania state law. Therefore, under *Vermont Real Estate Investment Trust,* the property at issue is not part of the debtor's estate.

■ Notwithstanding the holding in *Vermont Real Estate Investment Trust,* the appellant asserts that a constructive trust established under state law should not be given effect because of its detrimental effect on other creditors. *See* appellant's supplemental brief, pp. 2–4. The ap-

pellant primarily relies on the decision of the United States Court of Appeals for the Ninth Circuit in *In re North American Coin and Currency, Ltd.,* 767 F.2d 1573 (9th Cir.1985). *See* appellant's brief, pp. 5–7; appellant's supplemental brief, pp. 2–4. That case, and the appellant's arguments based thereon, are inapposite to the instant proceeding, however.

■ In *North American Coin,* the court declined to give effect to a constructive trust under Arizona law because the evidence in the record failed to establish the actual fraud required for the imposition of a constructive trust under Arizona state law. *See North American Coin,* 767 F.2d at 1576–1577. In this appeal, however, Pennsylvania law applies, and actual fraud is not required for imposition of a constructive trust. *See Metzger,* 338 Pa. at 569–570, 14 A.2d at 288; *Buchanan,* 457 Pa. at 153, 320 A.2d at 126, 127.

Moreover, in *North American Coin,* the Ninth Circuit expressly distinguished *Vermont Real Estate Investment Trust* and *Bengal Trading* on the ground that "[n]either of these cases expressly relied on a fraud rationale, but they can be explained by the fact that the brokers involved either could not legally complete a requested transaction or clearly had no intention of doing so." *North American Coin,* 767 F.2d at 1577. In *North American Coin,* "the customers who brought suit gave their funds to NAC at a time when the company was still conducting its business, albeit from a precarious position." *Id.* In contrast, in this case, Medicare transferred the PIP payment in question to VNA at a time when VNA had ceased operations and had failed to render services for the period covered by that payment.

This court recognizes that in the Third Circuit "[c]onstructive trusts are to be applied sparingly in bankruptcy contexts because they have the undesirable effect of giving preference to one creditor over others." *In re Buono,* 119 B.R. 498, 501 (Bankr.W.D.Pa.1990). However, imposing a constructive trust in this case will not have a preferential effect in favor of Medicare and against other creditors, namely Vanguard. Once VNA files the 1987 final cost reports as required by 42 C.F.R.

§ 405.406(b) and § 1395, and a final 1987 settlement is completed, Vanguard and any other creditors will be entitled to any funds found due to VNA from Medicare as reimbursement for the actual costs of services rendered prior to November 9, 1987. No preferential effect will result because VNA's creditors would be placed in the same position as they would have been if VNA had notified Medicare that it had ceased operations as it was required to do.

Therefore, this court finds that the constructive trust imposed on the December 11, 1987 PIP payment by the bankruptcy court under Pennsylvania law may be given effect and affirms the order of the bankruptcy court in this regard.

E. *Constructive Trusts and 11 U.S.C. § 544(a)*

■ Finally, appellant argues that his "strong-arm" powers as bankruptcy trustee under 11 U.S.C. § 544 permitted him to draw the December 11, 1987 PIP payment into VNA's estate even if the property did not automatically become property of the estate under 11 U.S.C. § 541. After plenary review, this court affirms the order of the bankruptcy court.

Issues concerning the application of section 544 are questions of law reviewable by this court under a plenary standard of review. *See Matter of Elin,* 20 B.R. 1012, 1015 (D.N.J.1982), *aff'd mem.,* 707 F.2d 1400 (3d Cir.1983); *Brown,* 851 F.2d at 84; *Gianakas,* 112 B.R. at 741.

Section 544 provides that:

(a) The trustee shall have ... the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists; [and]

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists[.]

11 U.S.C.A. § 544(a). Neither section 544(a)(1) nor section 544(a)(2) confer on the appellant as trustee any greater rights than those granted to a judgment or execution creditor under the applicable Pennsylvania state law. *See* 4 Collier on Bankruptcy § 544.02 (15th ed. 1980) at 544–6—544–11. Under the Bankruptcy Code, "[w]hile the rights given to the trustee are governed by federal law, the extent of the rights in regard to the priority of the lien holders is controlled by state law." *Matter of Chaseley's Foods, Inc.,* 726 F.2d 303, 307 (7th Cir.1983). *E.g., Commercial Credit Co. v. Davidson,* 112 F.2d 54, 55 (5th Cir. 1940); *In re Roman Crest Fruit, Inc.,* 35 B.R. 939, 946–47 (Bankr.S.D.N.Y.1983); *Elin,* 20 B.R. at 1019; 4 Collier on Bankruptcy, ¶ 544.01 at 544–5 (15th ed. 1980).

Therefore, the issue is whether a judgment or an execution creditor occupies a position superior to that of a beneficiary of a trust under applicable Pennsylvania law. Accordingly, this court need not, and does not, determine whether section 544 supercedes section 541 in the Third Circuit. Even if 11 U.S.C. § 544 supercedes 11 U.S.C. § 541 in the Third Circuit, the appellee must prevail since neither a judgment creditor nor an execution creditor may prevail over the beneficiary of a constructive trust under Pennsylvania law.

■ The appellant asserts without any precedential support that "since an executing creditor could have garnished the bank account, the trustee's power under 11 U.S.C. § 544(a)(2) defeat[s] the constructive trust beneficiary." Appellant's supplemental brief, p. 5. Under applicable Pennsylvania law, however, at least as to property interests in real estate, "judgments against the owner of the apparent title are not valid as liens upon the equitable titles of others in the land...." *Hemminger v. Leidigh,* 21 D. & C. 287, 289 (1934); *Reed's Appeal,* 13 Pa. 475, 478 (1850).

In *Kauffman v. Kauffman,* 266 Pa. 270, 109 A. 640 (1920), for example, the Su-

preme Court of Pennsylvania refused to protect a judgment creditor from a beneficiary of a trust because the Act of June 4, 1901, P.L. 425 which provided for the protection of judgment creditors did not apply and "its lien attache[d] merely to the defendant's interest inland." *Kauffman,* 266 Pa. at 275, 109 A. 640. Thus, since the judgment creditor was a trustee with no beneficial interest, the land at issue was not bound by the judgment. *Id. See also Shyrock v. Waggoner,* 28 Pa. 430 (1857).

Similarly, the Act of June 4, 1901, P.L. 425 does not afford protection to Kemp as a judgment creditor under section 544 because "[t]he statute has been strictly construed and it applies only to the resulting trusts which arise with respect to real estate by reason of the payment of the purchase money by one person, and the taking of legal title in the name of another." 6A *Standard Pennsylvania Practice* 586 (1960).

Therefore, this court affirms the order of the bankruptcy court because neither judgment nor execution creditors are protected against the beneficiary of a trust under Pennsylvania law. *See Hemminger,* 21 D. & C. at 289; *Kauffman,* 266 Pa. at 275, 109 A. 640.